NINA E. GRANT, Administratrix, Appellant, v. KANSAS CITY SOUTHERN RAILWAY COMPANY, Respondent.

Kansas City Court of Appeals, June 2, 1913.

1. **RES GESTAE: Evidence: Time.** A brakeman on a freight train was run over during the night and his arm crushed by one of the cars of defendant, from which he afterwards died. After a person hearing his outcry had come to him and then gone to a near-by house for assistance and aroused a man there and they had gone to him, and after they procured a cot and put him on it, and after word had been conveyed to parties in charge of a switch engine at the opposite end of the railway yards, one-fourth of a mile away, and after they procured a caboose and came to the scene—the time being from twenty to thirty minutes after the injury—deceased said to one of them: "Hello, Bill," and he answered: "What is the matter, Arthur;" deceased said: "I have lost a wing;" when he asked, "How and where did it happen?" deceased answered: "The hold was gone and I stumbled and fell," when he replied: "That is too bad." It was *held* that this declaration of deceased was not admissible in evidence as a part of the *res gestae.*

2. **ONUS ON A PLAINTIFF: Probability: Doubt: Possibility.** It devolves upon a plaintiff in a civil action to make out his case, not beyond doubt, but to a reasonable degree of certainty and probability. A mere possibility in his favor is not sufficient.

3. **Ordinary Care: Presumptions: Inference for Jury.** Where a brakeman on a railway freight train was found lying by side of the track in the night time with his arm cut off, from which injury he shortly died; though no one saw the mishap, yet, a jury would be justified in finding that being a man of experience he could have climbed the ladder of a slowly moving freight car in safety and to infer therefrom that he attempted to climb onto the tender of the engine and fell on account of the absence of a hand hold.

4. **FOREIGN STATUTE: Decisions: Showing in Plaintiff's Evidence.** A statute of the State of Arkansas, as construed by the Supreme Court of that State, made the mere fact of a railway train killing a person by running upon him, prima facie evidence of liability and cast the onus on the railway to exculpate itself; yet where plaintiff's own evidence showed no negligence on part of defendant's servants in running the train, no case is made against defendant.

Appeal from Jackson Circuit Court.—*Hon. Jas. H. Slover,* Judge.

REVERSED AND REMANDED.

*W. J. Costigan* and *E. H. Gamble* for appellant.

(1) The declaration of deceased as to the cause of his injury was competent. Missouri cases rejecting declarations of employees who perpetrated the injury, made after the event, holding that they are neither admissions of the principal nor *res gestae.* Price v. Thornton, 10 Mo. App. 92; Ladd v. Couzins, 35 Mo. 513; McDermott v. Railroad, 73 Mo. 516; Adams v. Railroad, 74 Mo. 553; Devlin v. Railroad, 87 Mo. 545; Barker v. Railroad, 126 Mo. 143; Ruschenberg v. Railroad, 161 Mo. 70; Koenig v. Railroad, 173 Mo. 698; Redmon v. Railroad, 200 Mo. 1; Frye v. Railroad, 200 Mo. 377; Strode v. Conkey, 105 Mo. App. 12; White v. Railroad, 132 Mo. App. 339. (2) The rule is more liberal as to admitting declarations by the person injured, and the declarations of Arthur Grant, as to the cause of his injury, should have been admitted as *res gestae.* Brownell v. Railroad, 47 Mo. 239; Harri-

man v. Stowe, 57 Mo. 93; Enthwistle v. Feightner, 60 Mo. 214; Stoeckman v. Railroad, 15 Mo. App. 503; Leahey v. Railroad, 97 Mo. 165; State v. Martin, 124 Mo. 514; Stevens v. Walpole, 76 Mo. App. 213. (3) The trial court erred in refusing to hold that, under the Arkansas laws, the showing to the effect that deceased was killed by the running of a train in itself, in the absence of testimony exculpating defendant from blame, warranted a recovery. Constitution of Arkansas, art. 17, sec. 12; Kirby's Digest of Arkansas Statutes, sec. 6607 and 6773; Railroad v. Payne, 33 Ark. 816; Railroad v. Taylor, 57 Ark. 136; Railroad v. Townsend, 41 Ark. 382; Railroad v. Eubanks, 48 Ark. 460; Railroad v. Rice, 51 Ark. 467; Railroad v. Hill, 79 Ark. 76; Railroad v. Standifer, 81 Ark. 275, 99 S. W. 81; Chicago Mill Co. v. Cooper, 90 Ark. 326, 119 S. W. 672; Tilley v. Railroad, 49 Ark. 535; Railroad v. Neeley, 63 Ark. 636, 46 S. W. 30.

*Cyrus Crane* and *George J. Mersereau* for respondent.

(1) The declarations of the deceased were not admissible. They were not part of the *res gestae.* Leahey v. Railroad, 97 Mo. 172; Dunlap v. Railroad, 145 Mo. App. 221; Hooper v. Insurance Co., 166 Mo. App. 213; Jewell v. Manufacturing Co., 166 Mo. App. 563. (2) (a) The trial court did not err in refusing to submit the case to the jury, because the circumstances were not sufficient to make a case of liability. (b) A case of liability was not made out even if the declaration had been admitted. Stoeckman v. Railroad, 15 Mo. App. 513. (3) The Arkansas statute as construed and interpreted by the Supreme Court of that State does not make out a case for plaintiff. Railroad v. Standifer, 81 Ark. 275, 99 S. W. 81.

ELLISON, P. J.—Plaintiff is the administratrix of the estate of Arthur Grant, who was fatally injured by

being run over by one of defendant's trains at Mena,. Arkansas, which she charges was caused by the absence of an "iron handhold" on the end of the tender of the engine.

Deceased was in the employ of defendant as head brakeman on a freight train. The train had left a. point sixty miles south and had arrived at Mena where the engine and crew were to be changed and the train be taken thence on north by another engine and crew. When the train arrived at Mena a freight train, also bound north, was standing in on the siding, which made it necessary that the train involved in this controversy stand on the main track just below the switch, the engine being perhaps 150 feet from the rear of the other train. There each stood for near an hour, waiting for a southbound passenger train to arrive. When the latter train got in, the freight train standing on the siding began to move out, making room for the train in controversy to move in and clear the main track so the passenger could pass on its way. It did immediately begin to move, following closely on the outgoing train but intending to stop at the upper end of the siding, where the engine would be detached and a fresh one and new crew substituted. It was deceased's duty as head brakeman to be on the front end of the car next to the engine while approaching or moving through a station. Presumably during the long wait, he had left the train intending to board it as it started into the siding. At any rate, as the train began to move forward, the engineer (plaintiff's witness) saw him about 150 feet up the track walking back towards the engine on the east side of the track. He walked by the engine as it moved on at about three miles an hour. He had his lantern and was last seen by the engineer when opposite the rear end of the tender and about four feet east of it. There was a step at the rear end of the tender and there had been

above it an iron "handhold." With the aid of these one could climb on top of the tender. So there was a "ladder" at one, or the other, end of the car next to the tender. But at this time the handhold was not there, and there was evidence tending to show that it had been missing several days. The train, which was near a quarter of a mile in length, went on into the siding, stopping with the engine up at the upper end. Deceased was found lying by the side of the track near where last seen, with his arm about crushed off, so that it was amputated, and from the effect of which he died in twenty-four hours. He being dead, and there being no eyewitnesses, the engineer being the last one to see him before the catastrophe, the question to be determined, if possible, is what caused his injury and what part in its happening did he, himself, take? The theory of plaintiff is, and her case depends upon its correctness and the proof of it, that in the dark he did not see the absence of the handhold and in reaching for it, at the same time attempting to put his foot on the step, he stumbled and fell with his arm under the car. Whatever tendency there was in the testimony of the engineer, was to disprove this, for he last saw him opposite the handhold and four feet to the east, walking away, and to reach it he would have to turn and run back.

Plaintiff was thus brought to depend upon a declaration of deceased, which she claims was a part of the *res gestae* and therefore proper evidence. Proof of this declaration, as offered, came through the lips of one W. A. Grant, a cousin of deceased. He says that after he heard of the misfortune he went to the scene, when deceased said to him: " 'Hello Bill.' I says, 'What's the matter, Arthur?' He says, 'I've lost a wing.' I says, 'How and where did it happen?' He says, 'The hold was gone and I stumbled and fell.' I says, 'That's too bad.' " The trial court refused the evidence and that ruling is the main ground of

the appeal. The determination of what is a part of the *res gestae* is generally difficult. If the words of the party interested are the narration or explanation of a past event, they are merely self-serving declarations. They may be the words of a truthful man, but he is frail and subject to the influence of self-interest, and being made without opportunity for those whom they affect to defend themselves, safety only lies in their absolute inadmissibility. But if they are spontaneous exclamations, they are considered a *part of the occurrence,* and are called verbal acts, and, as such, you may prove them, just as you would prove the man's physical acts. But to be considered spontaneous exclamations, or statements, they need not necessarily be simultaneous or *coincident* with the main fact. Thus, where a physical act has ended, but it caused unconsciousness, a declaration immediately following restoration, explaining or illustrating the character of the physical happening, might well be a part of it—the unconscious blank not, in reality, being a disconnection. We need not say that unconsciousness is the test when time intervenes. It is used here merely as illustrative. If the declaration is so clearly connected with the transaction that it can, in the ordinary course of affairs, be said to be the spontaneous exclamation of the real cause, it is admissible; for, in such case they form a continuous transaction. Disconnection destroys the rule and its reason. Thus, in Leahy v. Cass Ave. & F. G. Ry. Co., 97 Mo. 165, 173, a boy was hurt by a street car. He was picked up and carried to a near-by house and laid on a cot, and within five or ten minutes, in answer to a question as to how he came to be hurt, said the driver kicked him off the car step. This was held to be the statement of a past event and inadmissible. The case has been frequently approved by the Supreme Court. [Ruschenberg v. Railway Co., 161 Mo. 70; Barker v. Railway Co., 126

Mo. 143; State v. Hendricks, 172 Mo. 654; and Redmon v. Railway Co., 185 Mo. 1.

In Dunlap v. Railroad, 145 Mo. App. 215, we held that the statement of an injured party who was injured in a mail car, that the ventilator had been made to fall upon his foot by the rough handling of the car, made after the injury and after the car had been stopped, was inadmissible on the ground that it was but a statement of a past transaction. On the other hand in the recent, yet unreported, case of Giles v. Railway Co., we held that a statement of the injured party while yet under the car and within two minutes of the accident, was spontaneous and part of the act in controversy and admissible as *res gestae*.

In Hooper v. Insurance Co., 166 Mo. App. 209, a man fell to the floor of a running street car. The question was whether he fell from a lurch of the car, or sank down by reason of a stroke of apoplexy. He was carried to his own home near-by and put upon a sofa. Within thirty minutes he complained of his arm hurting him and stated that he fell in the car. This was held not to be a part of the *res gestae*.

Applying the law as announced in these cases, to the facts shown in support of the offer of the evidence in question, leaves no doubt of the correctness of the ruling of the trial judge. No one saw the accident and consequently, when he made the statement, he had not the restraining influence which comes from the presence of those who have some knowledge of the manner of his injury. The first man to discover him was Thrasher and another man, not named. He made no statement to them. One of these went to Anderson's, a section foreman who lived near-by, and awakened him and got him to come to the assistance of deceased. A cot was furnished by him—whether he took it along with him or went back after it, does not appear. But no statement was made to Anderson. Then it seems word of the accident was conveyed to persons at the

north end of the yards, about a quarter of a mile away, and they, including deceased's cousin to whom the statement was finally made, got on a switch engine, coupled it to a caboose car and went to the place where they found deceased lying on the cot which had been furnished by Anderson. Then it was that the cousin (witness Grant) after being spoken to by deceased, asked him to tell "how and where" it happened, and in response he related it in the words already quoted. The precise time between the injury and the statement cannot be given. It could not reasonably have been much less, if any, than a half hour. One witness down at the switch engine, said they coupled onto the caboose and reached deceased in fifteen or twenty minutes *after* they got word of his being hurt; while witness Grant said it was five or ten minutes. But which of the two may be nearest correct does not alter the fact that word was not sent to them until after deceased was discovered and first attention was being given him, and so, necessarily, considerable time had elapsed. The statement was not the involuntary ejaculation, simultaneous with an injury. It was not such a statement after the fact, as was so connected with it that it became a part of the fact; it was not so connected as to be a part of one transaction. It was the narration of a past event, not given at the first opportunity, but in answer to a question as to how and where it happened. [Hooper v. Ins. Co., supra.]

But plaintiff further insists that, conceding the statement of deceased was rightly excluded by the court, yet there was enough circumstantial evidence brought out to justify a submission of the case to the jury. After some hesitation we have concluded plaintiff is right in this position, and we shall therefore reverse the judgment and remand the cause for trial. Deceased was found in the nighttime by the side of the track with his arm severed. It is not disputed that the injury was caused by one of the cars running over

him. Referring back to our statement, it appears he was last seen by the engineer walking back past the engine when at a point opposite the rear of the tender with the missing handhold. In the dark he would not notice the absence of the handhold. If he got one foot in the stirrup, the other yet on the ground, and reached for the handhold, the cars moving, he would be in a situation to stumble or fall, his arm getting under the wheel. Is that, or a similar situation, based on the absent handhold, an inference a jury could reasonably draw from the evidence?

In Kelly v. Railroad, 141 Mo. App. 490, will be found a case in some respects like this. It is true the deceased in that case was last seen with his lantern standing in a stirrup attached to and beside the moving car, clinging with his hand to a hold above; the theory being that he was knocked off by a wheelbarrow left too near the track; while here, as just said, deceased was last seen four feet from the car that had had a handhold. But the discussion of the necessity resting upon a plaintiff to make out his case, not beyond possibility of doubt, but to a reasonable probability and the right of inference by a jury, will well serve to illustrate our views in this case. That deceased received his injury from the tender or car, while attempting to get on one or the other, is a most reasonable inference. The troublesome point is, did he receive it while attempting to get on the tender with the missing handhold, or the next car with an outside ladder?—defendant being liable in the former instance and not liable in the latter. We must presume him to have been in the exercise of ordinary care; and a jury could well conclude that if, with his experience, he had attempted the car with the ladder in good order, he would not have fallen, and that therefore he, in all reasonable probability, was trying to get upon the tender. We are cited by plaintiff to Cameron v. G. N. Railway Co., 8 N. D. 124, 131-134. It is not like

this case in its facts, but on the question whether the circumstances were such as to authorize a jury to say that death had resulted from the negligence of the railway company, it strongly illustrates the position we have taken. On the question of presumption of ordinary care and of the right of the jury to draw reasonable inferences based on circumstantial evidence, Buesching v. St. Louis Gaslight Co., 73 Mo. 219, will be found applicable and instructive to the observations we have made.

Plaintiff's petition contained an additional count, stating a cause of action based on certain statutes of Arkansas and the decisions of the Supreme Court of that State. That count merely alleges that deceased was killed by being run over by one of defendant's trains, the claim being made that the statute, and decisions thereunder made the mere showing of death by being run over by the train, a prima facie case, throwing the onus on the railway to show it was not negligent, or that deceased was guilty of contributory negligence.

A statute of Arkansas requires a vigilant lookout in the running of trains. Another statute reads that all railroads "shall be responsible for all damages to persons and property done or caused by the running of trains in this State." [Sec. 6773.] Many decisions of the Supreme Court of Arkansas are cited construing this statute to mean, as we have above stated, that a showing of death resulting from being run over threw the onus on the defendant to exculpate itself. But these cases state the necessary exception, that no onus or burden of showing no negligence is thrown upon the defendant in cases where plaintiff's own testimony shows there was none. The words of the court, in one of the principal cases, being that a prima facie case of negligence is made when it is shown that the person was killed by being struck by a train "and it devolves on the company to show that its employees in charge

of the train exercised due care, or that deceased was guilty of contributory negligence, *unless these facts appear from the evidence of the plaintiff."* (Italics ours.) [St. Louis, I. M. & S. R. Co. v. Standifer, 81 Ark. 275.] It will be observed that the prima facie case is made by plaintiff and the onus thrown on defendant to exculpate itself, where the injury was "caused by the running of trains." In this case the facts exculpating defendant did appear in the evidence for plaintiff. It appeared from the evidence of her two witnesses, the engineer and fireman, that the utmost care was exercised by them. The train was going little faster than a man would walk and these men were each at his post, on guard. The engineer saw deceased pass out of his sight in safety. From this, no necessity existed for a showing by separate evidence in behalf of defendant.

For reasons stated above, the judgment is reversed and the cause is remanded. All concur.