## A. D. KELLY, Adm'r, Respondent, v. UNION PA-CIFIC RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals, January 24, 1910.**

1. **FOREIGN ADMINISTRATOR: Assets: Judgment in one State on Cause of Action Arising in Another.** Recovering judgment in this State by an administrator appointed in another State, on a cause of action accruing in the other State, is not transferring assets of the estate from one State to another, and the statute of this State permits an administrator appointed in another State to bring suit in this State on a cause of action accruing in the foreign State.

2. ———: ———. The administrator is a mere trustee to bring the action and the sum recovered is not assets of the estate, but belongs to those named in the statute.

3. **CONSTITUTIONAL QUESTION: Case Transferred From Supreme Court to Court of Appeals.** A case appealed to the Supreme Court and by that court ordered transferred to the Court of Appeals after hearing objections to the transfer on account of constitutional questions being involved, will be regarded here as not presenting such supposed question.

4. **FELLOW-SERVANTS.** A freight car was switched by a switch engine from one track to another and the deceased, who was one of a switching crew, rode on the side thereof for the purpose of stopping it at the proper place. A wheelbarrow had been left by the car-repairer crew, of another department, so near the track that deceased's body struck it as he passed by and he was thrown under the car and killed. *Held*: That the deceased and the members of the repair crew were not fellow-servants.

5. **PERSONAL INJURY: Demurrer to Evidence.** Where the evidence tended to show that it was the duty of a switchman to ride a car that had been put from one track onto another, in the nighttime, by a running switch, and that he placed his foot in a metal stirrup at the bottom of the body of the car and clung with his hands to rounds of a ladder leading to the top, and thus rode at the side of the car until knocked off by a wheelbarrow which had been negligently left so near the track that he struck it, a case was made for a jury, and a demurrer to the evidence was properly overruled.

Kelly v. Railroad.

6. **CIRCUMSTANTIAL EVIDENCE: Possibility: Reasonable Certainty.** Though no one saw the catastrophe, yet a case may be made for the jury by circumstantial evidence which need only establish a case by reasonable certainty. It was not necessary that the evidence exclude every possibility of the deceased's negligence, or of his being injured by unavoidable accident.

7. **ONE OF SEVERAL CAUSES.** Yet if it only appears that the injury happened from one of two causes, for one of which the defendant is liable, and the other not, the plaintiff has failed to make out a case.

8. **COMMON LAW: Master and Servant.** Where an action accrues in a State where the common law is in force as to liability of the master for injuries to a servant caused by the negligence of a fellow-servant, that law will govern in the trial of the action in another State. But in the absence of showing that the common law has any particular interpretation in the State where the action accrued, it will be tried according to the common law as interpreted and administered in the State where tried.

Appeal from Linn Circuit Court.—*Hon. John S. Butler*, Judge.

AFFIRMED.

*R. W. Blair* and *Douglass & Watson* for appellant.

(1)   The law of 1905 (Session Acts 1905, p. 95), authorizing a foreign administrator to sue on a cause of action arising in another State is unconstitutional and void for the reason the Legislature of this State has no power or authority to confer on an officer appointed by the courts of another State, the right to withdraw assets under its exclusive control and jurisdiction, and take them to another jurisdiction without the consent or authority of the court appointing such officer.   The Legislature can legislate only upon matters relating to persons or property within this State.   D'Alcy v. Ketcham, 11 How. (U. S.) 165; Pennoyer v. Neff, 95 U. S. 720. (2)   A cause of action for damages for death is such an asset as will confer authority on a court to grant letters

of administration. 18 Cyclopedia of Law and Proced., p. 70, and cases cited. Railroad v. Lewis, 2 L. R. A. 67 and cases cited. (3) Letters of administration have no extra territorial force or effect and a foreign administrator has no right to sue beyond the jurisdiction of the State appointing him. 18 Cyc., p. 1221 and cases cited; Minor v. Cardwell, 37 Mo. 351, and cases cited. (4) An administrator by removing assets of his intestate beyond the limits of the State appointing him forfeits all right and title to such assets and cannot sue for same. Kilpatrick v. Bush, 23 Miss. 199; Woerner's Amer. Law of Admr., sec. 164 and cases cited. (5) At the time of the alleged wrongful death a foreign administrator could not maintain such a suit in this State. Vawter v. Railroad, 84 Mo. 679; McGinnis v. Foundry Co., 174 Mo. 231; 18 Cyc., p. 1237, and cases cited; Taylor v. Barron, 35 N. H. 495, and cases cited. (6) The statute 1905 (Session Acts, p. 95) confers on such foreign administrator a title to sue, or right to sue in this State. Bliss on Code Plead., sec. 408; Bulkey v. Iron Co., 77 Mo. 107; Haskins v. Alcott, 13 Ohio St. 217; Warner v. Railroad, 178 Mo. 734; Epperson v. Telephone Co., 155 Mo. 346; Searles v. Railroad, 101 N. Y. 661; Oglesby v. Railroad, 177 Mo. 272; Root v. Railroad, 195 Mo. 367; Grant v. Railroad, 133 N. Y. 659. (7) Deceased and the car repairmen were fellow servants under the law of Wyoming. Law of Wyoming governs in determining this question. Root v. Railroad, 195 Mo. 367, and cases cited; Lee v. Railroad, 195 Mo. 400. (8) Under the common law as construed and declared by the courts of England, deceased and car repairers were fellow-servants. McDermott v. Railroad, 30 Mo. 115; Rohbeck v. Railroad, 43 Mo. 192; Parker v. Railroad, 109 Mo. 409; Dixon v. Railroad, 109 Mo. 423; Randall v. Railroad, 109 U. S. 482; Lanning v. Railroad, 196 Mo. 647; Grattis v. Railroad, 153 Mo. 380; Murray v. Railroad, 98 Mo. 577; Koener v. Car Co., 107 S. W. 481; Strottman v. Railroad, 109 S. W. 769; Rail-

way Co. v. Murphy, 53 Ill. 337; Besel v. Railroad, 70 N. Y. 176; Corcoran v. Railroad, 126 N. Y. 673; Potter v. Railroad, 136 N. Y. 79; Railway v. Harrington, 62 Texas 597; Macken v. Railroad, 135 Mass. 203; Wood on Railway Law, vol. 3, p. 1501, sec. 388. (9) If the deceased chose the more dangerous way he was guilty of contributory negligence. Hurst v. Railroad, 163 Mo. 322; Moory v. Railroad, 146 Mo. 572.

*Bresnehan & West* for respondent.

(1)   The act of 1905 is not unconstitutional. 13 Am. and Eng. Ency. Law, 948, 953; Nailor's Admr. v. Moffatt, 29 Mo. 126; Wilson v. Tootle, 55 Fed. 211; Mc-Carty v. Railroad, 62 Fed. 437.   (2)   The right of a State to authorize suit to be maintained therein by a foreign personal representative to recover for the wrongful death of his intestate under the statute of the State of his appointment, where the damages recoverable do not become assets of the estate and are not subject to the payment of the debts of the intestate, but belong to the next of kin, is universally recognized. Popp v. Railroad, 96 Fed. 465; Railroad v. Thieband, 114 Fed. 918; Williams v. Railroad, 138 Fed. 571; 13 A. E. Enc. of Law, 953; 18 Cyc. of L. & P., 1239; Thompson on Neg., sec. 6998; Elliott on Railroads, sec. 1372; White's Personal Injuries on Railroads, sec. 71; Railroad v. Cox, 145 U. S. 593.   (3)   The act of 1905, applies to rights of action already accrued.   13 Am. and Eng. Ency. Law, 948, 949; McGinnis v. Mo., etc., Co., 174 Mo. 225; Casey v. Hoover, 197 Mo. 62; May v. Burk, 80 Mo. 675.   (4)   Evidence of negligence need not be direct and positive; it may be inferred from the surrounding circumstances.   Rine v. Railroad, 100 Mo. 228.   (5)   "It is sufficient if the facts proved are of such a nature and are so connected and related to each other, that the conclusion therefrom may be fairly inferred."   Combron v. Railroad, 165 Mo. 543; Settle v. Railroad, 127 Mo. 341.   (6)   Who are fellow-servants?   Parker v. Rail-

road, 109 Mo. 409; Relyea v. Railroad, 112 Mo. 93; Railroad v. Baugh, 149 U. S. 368; 12 Am. & Eng. Ency. Law, 971; Sullivan v. Railroad, 97 Mo. 113; Conden v. Railroad, 78 Mo. 567; Lewis v. Railroad, 59 Mo. 495; Hall v. Railroad, 74 Mo. 298; Koerner v. Car Co., 209 Mo. 141, 152; Grattis v. Railroad, 153 Mo. 380; Railroad v. Herbert, 116 U. S. 642; Railroad v. Ward, 61 Fed. 927; Railroad v. Mansberger, 65 Fed. 196; Railroad v. Thompson, 70 Fed. 944.

ELLISON, J.—James E. Sims was engaged in defendant's service as a switchman in its yards at Cheyenne, in the State of Wyoming. While so engaged he was killed by cars he was assisting to switch from one track to another. The plaintiff is administrator of his estate, appointed in the State of Wyoming. He brought this action against defendant in Linn county, Missouri. Under the laws of Wyoming an action is given to the administrator for the death of his intestate caused by the negligence of another, the sum recovered to be distributed to those entitled to his estate. [Secs. 3448, 3449, R. S. Wyoming 1899.] And by the laws of this State such an action accruing in another State may be brought in this State by the administrator appointed in the State where the action accrued. [Laws Mo. 1905, p. 95.]

By a process of statement and reasoning that we regard as ill-founded, defendant insists that by allowing the action to be brought in this State, it is transferring the assets of an estate in Wyoming to this State, and therefore violates the Constitution, State and Federal. It is not transferring assets. The sum recovered is not assets of the estate. The administrator is a mere trustee to maintain an action for the benefit of those entitled to the damages, as they are named in the statute. [McCarty v. Railroad, 62 Fed. 437; Elliott on Railroads, sec. 1372; White's Personal Injuries, sec. 71.]

However that may be, the matter has been disposed

of by the Supreme Court, the amount of the judgment was above the appellate jurisdiction of this court when it was obtained and for that reason the appeal was taken to the Supreme Court. Before it was heard in that court the jurisdiction of this court was raised by the statute to a sum greater than the judgment, and by provision of the statute all cases pending unsubmitted in the Supreme Court which fell within the jurisdiction of this court as thus increased, were to be transferred to this court. Accordingly counsel for plaintiff filed a motion to transfer the case to this court, and counsel for defendant opposed the motion, suggesting that while the amount involved was within the jurisdiction of this court, the constitutional questions were in the case and therefore jurisdiction remained in the Supreme Court, since in all cases involving a construction of the State or Federal Constitution the Supreme Court alone had jurisdiction. Nevertheless, the latter court transferred the case to this court, which in our view, eliminates all alleged constitutional questions.

To repeat all the matter related in the briefs of counsel as to the death of the deceased and its cause, would take much space. For all practical purposes it will be only necessary to state that as already said, deceased was one of defendant's switchmen. At the time of his death he was engaged, in the nighttime, in assisting to switch cars from one track to another. It was his duty to get on cars which had been "kicked" onto another track, and ride to the place where they were to be stopped. The cars involved here were pulled out from one track and "kicked" down another track towards the east. Deceased got on the outside of the head car and started to ride it down to the place where he would stop it. The car had a metal stirrup as the foothold one would take in getting on top the car or could stand on with one foot while clinging to the car and riding a short distance by holding to the ladder with his hand and the other foot unplaced or, perhaps,

on the oil box to the side and over the wheel of the car. A wheelbarrow had been left near the track, at not a great distance down, and it is plaintiff's theory that this barrow, being negligently left so near the track, was struck by the deceased with a portion of his body as he rode along on the side of the car, and that he was thus knocked so that his foothold was loosened and clinging with his hands, he finally was caught by the wheels and mangled to death. No one saw him fall, but one of the crew, noticing he did not return, became uneasy and went along the track. He stated: "I started down the right hand side of No. 7 going east. In about eight carlengths from the lead, maybe more, maybe less, I came against a wheelbarrow turned upside down, about between ten or fifteen feet I found the lamp that Sims carried lying on the side and out, about five feet further I found his cap, then whistled for him. By that time I was alarmed. I walked on down several car lengths, don't know exactly, I didn't count them, and I saw his glasses, and further on a place where something had dragged commenced to appear along side the track. Must have been Sims' body. I don't know. Well, I went down the track, looking for something, expecting to find Sims hurt. At about five and eight car lengths from where I found his cap I found part of his entrails across the rail and more between the track. Then I hurried along a little further and found his body lying outside the rail, terribly mangled, with his foot still under the wheel."

The wheelbarrow was used by defendant's servants, known as the repair crew, in carrying tools and material or "brasses" for "hotboxes" at the carwheels. It was found turned over towards the track on which was the car that deceased rode. Deceased was last seen as he was getting on the car. As described by a witness, he put "one foot on the oil box and caught hold with his left hand and threw his right foot upon the stirrup." That he was on the side of the car, was testified to by

the fireman of the switch engine, who could tell by see-
ing his lantern.

Defendant insists that there was not sufficient evi-
dence to submit the case to the jury and that therefore
the peremptory instruction which it offered should have
been given. It insists that the cause of his death was
unseen and is unknown and that therefore on the theory
that the burden is on the plaintiff, holding the affirma-
tive, to make out his case with certainty, he should not
have been permitted to recover. It is quite true, prac-
tically speaking, an existing right may be remediless,
or, speaking differently, not capable of enforcement
from inability to show its existence to others by compe-
tent testimony. One thus circumstanced is the victim
of misfortune. A case is not made out for the complain-
ing party when it is only shown that he may, or may not
have a cause of action. If the evidence shows that an
injury "may have resulted from one of two causes, for
one of which and not the other, defendant is liable, the
plaintiff must show with reasonable certainty that the
cause for which the defendant is liable produced the re-
sult, and if the evidence leaves it to conjecture, the
plaintiff must fail in his action." [Warner v. Railroad,
178 Mo. 125; Root v. Railroad, 195 Mo. 348; Smart v.
Kansas City, 91 Mo. App. 586.]

But giving to defendant the full benefit of the fore-
going statement as to the necessary showing a plain-
tiff, upon whom the burden rests, must make, we are yet
unable to adopt its conclusion as to the character of
case which the plaintiff made out. The evidence leaves
a possibility of the deceased's death resulting from cir-
cumstances or causes for which defendant would not be
liable. But we think it showed sufficient facts and de-
veloped sufficient circumstances which, united, gave
ample ground for the jury to say, with reasonable cer-
tainty, that the proximate cause of the death was de-
fendant's negligence in leaving the wheelbarrow where

it was. And reasonable certainty is all that is required. A possibility of a cause for which defendant would not be liable is not enough to outweigh a probability of such nature and carrying such strength as to produce reasonable certainty in the minds of a jury. A mere possibility will not justify a jury in finding a defendant innocent in a criminal prosecution. The fact that the catastrophe which happened to deceased was unseen, will no more cut out a right to show by circumstances the cause of its occurring, than would the unseen commission of a crime prevent conviction on circumstantial evidence. So after due consideration of the suggestion made by defendant as to the sufficiency of the evidence, we have concluded it was ample to sustain the verdict, and hence find there was no error in refusing the demurrer.

It appears that under the laws of Wyoming, where the cause of action accrued, a master is not liable to his servant for injuries caused by the negligence of a fellow-servant. In other words, the common law prevails. The negligence causing the death of deceased was in leaving the wheelbarrow in such proximity to the track as to endanger those engaged in switching cars. As already stated, it was left at that place by those of defendant's servants whose duty it was to repair the cars, that is to say, as regards the present controversy, to fix defective boxes or keep the boxes in such condition as that they would not become heated, or to remedy what is known as a "hotbox" when found to exist with any of the car axles. We have already seen that the deceased belonged to the switching crew. It is defendant's contention that he and the servants using and who left the wheelbarrow, too near the track, were fellow-servants and that therefore there is no liability. On the other hand plaintiff's position is that they belonged to different departments and were disassociated and under the control, supervision and immediate employment of different departmental agents of defendant; and were therefore not fellow-servants. And the court, at

his instance gave an instruction, in substance, that if the car repairers were engaged in the mechanical department of defendant's service under the general management and control of the master mechanic, and that deceased was engaged in a different department, which was under the management and control of defendant's train master, then deceased and the car repairers were not fellow-servants. The evidence amply justified the instruction. In view of the character of the evidence we are inclined to the opinion that the court would have been justified in declaring as a matter of law, as now understood in this State, that they were not fellow-servants.

Who are properly classed as fellow-servants has been much discussed and the conclusions of the courts of the various States are not harmonious. It is briefed in this instance as governed by the rule at common law as declared in this State. The difficulty causing discordant views doubtless arises from the fact that the term, fellow-servant, can properly be used in more than one sense. Its general sense is exceedingly broad. One's fellow-man would include all men, and one's fellow-servant would include all servants of the same master. But fellow-servant, as applied to the liability of a master, is a technical expression, which makes necessary to limit or restrict its meaning so that it may be confined within the reason for its adoption as a rule of law. Its adoption and enforcement arises from public policy; some have said a mistaken policy. But it was thought that if a servant knew he was without a remedy if he was injured by the negligence of his fellow-servant, he would keep watch on such fellow and report his delinquency to a correcting power who could discipline him. "Guided by the reason for the rule, it seems to us it should be applied and applied only in those cases where the servant injured and the one inflicting the injuries are so associated and related in their work that they can observe and have an influence over each

other's conduct, and can report delinquencies to a common correcting power or head. In short, they should be fellow-servants in fact, and not simply in dialectic theory. If in separate and distinct departments, so that the circumstances just stated do not and cannot exist, then they are not fellow-servants within any just or fair meaning of the rule." This quotation is taken from the opinion of the Supreme Court in Koerner v. St. Louis Car Co., 209 Mo. 141. The court took and adopted it from a separate opinion of Judge BLACK, in Parker v. Railroad, 109 Mo. 362. In the Koerner case Judge GANTT reviews a number of cases which have been determined by that court in many years past. The case involved servants in a large car manufactory, employing a great number of men, and it was determined that a painter, working under a general paint foreman, was not a fellow-servant with a switching crew who moved cars in and out under the superintendent of the factory. Within the rule just quoted it was held in Lanning v. Railroad, 196 Mo. 647, that a workman emptying cars of coal into a bin was not a fellow-servant with an engineer on an engine which pushed cars of coal up an incline. A track walker was held not the fellow-servant of an engineer. [Schlereth v. Railroad, 115 Mo. 87; Sullivan v. Railroad, 97 Mo. 113.] Nor was a car repairer at a station the fellow-servant of a trainman. [Condon v. Railroad, 78 Mo. 567.] Nor was a section foreman and a switchman. [Hall v. Railroad, 74 Mo. 298.]

It seems clear that the servants in the case at bar could not be held by us to be fellow-servants without putting ourselves in conflict with the cases cited and with the reasons assigned in them. Here was a member of a switching crew under the control and direction of a trainmaster, and some one or more of car repairers under the orders of a master mechanic. They were distinct departments, the men of neither being under control of the head of the other. It is true there was tes-

timony that the yard or trainmaster would point out a car to the repairers, which he saw needed repairing, but that did not control the question whether the members of each crew were fellow-servants of the members of the other.

It is next contended that deceased was guilty of contributory negligence. Much of this is based on the assertion of how he must have carried his body while riding on the car so as to strike the wheelbarrow, and involves much conjecture. In our opinion, whether his riding the car and the manner of his riding it, were acts of negligence, were necessarily negatived by the verdict responsive to instructions given for either party. And the same may be said of his place of riding, whether at the side or on top.

Finally the action of the court as to the instructions is questioned. We regard them as presenting all proper issues in a plain way. There is no question but that the jury were made fully to understand the questions they were to decide. One branch of objection to them, if we understand it, is that the law as to fellow-servants in Wyoming is the common law of England and that as such it became a part of the contract between defendant and deceased and that the instructions were not in accord with the common law and therefore they impaired the obligation of a contract and were violative of section 10 of article 1, as well as the Fourteenth Amendment of the Constitution of the United States. The suggestion of a constitutional question seems not to have been advanced in the trial court in objections to instructions or otherwise, until after the trial was concluded and a verdict rendered. Then in the motion for a new trial it is set up that defendant has been deprived of its constitutional rights by the instructions. But aside from that, we pointed out at the outset that the Supreme Court, on objections made by defendant to transferring the case here, has ordered that it be done, which we regard as an adjudication

that defendant is without right to set up such claim on this appeal.

But aside from such consideration, we will add this: Defendant seems impressed with the idea that the common law being in force in Wyoming as to fellow-servants and becoming the law controlling the question whether plaintiff ever had a cause of action for the death of the deceased, such law has not been enforced in the trial of the cause. That is a misconception. The case was not heard by the trial court under any statute of this State as to fellow-servants. It was heard under the rules of the common law, as the court understood such rules, and in accordance with the way they are understood and declared by the Supreme Court. If those rules are not correctly understood, as defendant seems to think, it does not afford ground for stating that the trial has not been had under those rules, but simply that they have been improperly interpreted; and for that there can be no remedy until humanity grows to be perfect and all-wise.

The judgment should be affirmed. All concur.