ALICE HASENJAEGER *alias* ALICE STERNBERG, ADMINISTRATRIX OF ESTATE OF FRED H. STERNBERG, DECEASED, RESPONDENT, v. MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, A CORPORATION, APPELLANT. —53 S. W. (2d) 1083.

St. Louis Court of Appeals. Opinion filed November 8, 1932.

Rehearing denied November 23, 1932.

Writ of certiorari denied by Supreme Court December 31, 1932.

*Carl S. Hoffman, Alvin H. Juergensmeyer* and *B. H. Dyer* for appellant.

*Jesse H. Schaper, Randolph H. Schaper* and *Emil Roehrig* for respondent.

418

SUTTON, C.—This is an action for damages for the death of Fred H. Sternberg, brought under the Federal Employers' Liability Act. The trial, with a jury, resulted in a verdict and judgment for plaintiff for $5,000, and defendant appeals.

Defendant's railroad line runs from St. Louis southwest through Missouri, Kansas, Oklahoma, and Texas. The accident in which Sternberg met his death occurred on November 6, 1927, about 7:30 o'clock in the evening. It is alleged that he was struck and killed by passenger train No. 4. His body was found beside the track about three-quarters of a mile west of Bernheimer. The portion of the track particularly involved in this case lies between Bernheimer and a place known as the sink hole, which is about four miles west of Bernheimer. The track in this locality runs east and west. The train which struck the decedent was going east. The track between Bernheimer and the sink hole runs along the north bank of the Missouri River and at the foot of and along the south side of the Missouri River bluffs. In other words, the track runs between the bluffs and the river. The bluffs in several places in this locality rise to the height of 150 feet, and are near to and almost overhang the track. In seasons of wet weather and heavy rainfall rock and earth slide down from the bluffs upon the track and the waters of the Missouri River soften the bank of the river causing the same to cave and thus impair the roadbed and undermine the track. It appears that the Missouri River was bank full at the time of the accident. These bad track conditions in this locality, which were unusual and dangerous, had existed for a number of years. By reason thereof, the defendant employed and caused trackwalkers and watchmen to walk the track throughout each night and inspect the same and warn approaching trains of the track condition. It was the rule and custom for the trainmen of an approaching train to signal the approach of the train by sounding the whistle, thus calling for the watchman's signal. Thereupon the watchman would give his signal to the trainmen, and the trainmen by appropriate sounding of the whistle would indicate to the watchman that they had caught his signal.

There are several curves in the track between Bernheimer and the sink hole on account of the bank of the river on the south and the bluffs on the north, but there is a clear straight track for one-half or three-quarters of a mile between each curve, and there is a straight track with nothing to obstruct the view for a distance of at least a half mile west of the place where Sternberg's body was found.

The trackwalkers and watchmen, in doing their work of walking the track and keeping the same clear of obstructions and guarding the trains against bad track conditions, usually walked on the track between the rails carrying with them one-half dozen torpedoes and fuses and two lanterns, one red and the other white, lighted and burning, for use in flagging trains and giving proper signals to trainmen operating trains along the track, between Bernheimer and the sink hole. It was also the rule and custom of the trainmen to slow down their trains in this locality to a speed of ten miles per hour.

On November 6, 1927, and for two weeks prior thereto, Sternberg was employed by defendant as a special trackwalker and watchman. and as such he was engaged throughout each night for two weeks in the work of walking the track and guarding the trains between Bernheimer and the sink hole against bad track conditions. He entered upon the performance of his duties each day as such trackwalker and watchman at five o'clock in the evening, and continued in the performance of his duties throughout the night until seven o'clock in the morning of the following day. However, on the evening of November 6, 1927, he commenced his work thirty minutes late. He went upon the track at Bernheimer, where he lived with his family, at 5:30 o'clock. He took with him, as was his custom, his dinner bucket, one-half dozen torpedoes and fuses, and two lanterns, one red and the other white. The latter was lighted and burning as he left Bernheimer walking west therefrom on the track between the rails in the line of his duties as was his custom. He was last seen on that occasion several hundred feet west of Bernheimer so walking on the track west in the direction toward the sink hole. Passenger train No. 4 coming from the west ran between the sink hole and Bernheimer at a speed of from thirty-five to forty-five miles an hour, and arrived at Bernheimer fifteen minutes late, stopping at Bernheimer on a flag signal at 6:45, to take on passengers. One hour and thirty minutes later Sternberg was found dead by another trackwalker three-quarters of a mile west of Bernheimer. His body was lying on the south side of the track, his head next to the end of the crossties, and his feet extending in a southwesterly direction. There was a dent in his head, one of his hands was crushed, and so was one of his feet. The white lantern was broken and bent, and was lying upon the ground nearby; the red lantern, which was strapped on his back, was also broken and bent. Two blood spots were found the next morning by the side of the south rail of the track, one about eight feet west of the place

where the body was found, and the other, a large one, about seventy-five feet west thereof. It does not appear that after the passing of train No. 4, any other train had passed before the body was found.

Train No. 4, on the occasion in question, was operated, as before stated, at a high rate of speed, between the sink hole and Bernheimer. The bell was not rung or the whistle sounded, except when the train was flagged to stop at Bernheimer. The train carried a headlight, which was lighted and burning.

Bernheimer is a flag station along defendant's line, in Warren County, with a post office and a store, and a few families residing there. The railroad track is not enclosed from Bernheimer to the sink hole. There was a rock quarry a few hundred yards east of Bernheimer, where about twenty-five men worked. These men and others residing in the vicinity of Bernheimer and Gore, a station about a mile west of the sink hole, usually walked along the track of defendant in passing to and from their work and to and from the post office and store. There was no public road or other way between Bernheimer and Gore, and the use of the track by pedestrians was general. This use had continued for a long period of time.

After Sternberg's death a claim was filed for compensation under the Missouri Workmen's Compensation Act. The defendant filed answer to that claim in which answer it was alleged that at the time Sternberg received the injuries complained of he was in the line of his duty as trackwalker and watchman engaged in watching and inspecting defendant's main line of railroad track to see that it was in a safe condition for the passage of defendant's interstate trains, and more particularly for the passage of defendant's passenger train No. 4, operated from points in the states of Oklahoma and Kansas to St. Louis, and that both defendant and Sternberg were engaged in interstate commerce.

On the 6th day of November, 1927, the condition of the track at the sink hole was particularly bad, and only a few days before Sternberg was killed the sectionmen worked at the sink hole raising the track and filling in the shoulder with dirt and rock.

It was shown that there were as many as five bad track conditions at places between Bernheimer and the sink hole in the year 1927, caused by heavy rains. It appears that it was Sternberg's particular duty to guard the track at the sink hole, but he was also required to walk the track and inspect the same for bad conditions in going to and from the sink hole just as other trackwalkers and watchmen were required to do. It was shown that the trains were operating under slow orders between Bernheimer and the sink hole on and prior to November 6, 1927, and traveled at a speed of from ten to fifteen miles per hour. It was Sternberg's duty as a trackwalker and watchman to watch the track, and in case the track should become worse or dangerous for a train to pass, to stop the train; that is, it was his

duty to watch the track to see whether it was in a safe condition, and to signal approaching trains as to whether to go on or stop. If the track was safe, he signaled with the white lantern, by waving the lantern in such a way as to indicate to the trainmen that the track was all right and to come on. If the track was unsafe, and he desired the train to stop, he signalled with the red lantern by getting in the center of the track and swinging the lantern in front of him. He also put out torpedoes and red fuses.

Along the track between the sink hole and Bernheimer slides from the bluffs frequently occurred and damaged and obstructed the track. It was the duty of the trackwalker to remove these obstructions and repair the track if he was able to do so, otherwise it was his duty to put out torpedoes and flag approaching trains to stop.

It was shown that the white lantern carried by Sternberg, when lighted and burning, could be seen at night, where the view was unobstructed, over a half mile. It was his habit to carry the white lantern, and would always have it with him carrying it in his hand and burning, when he was on duty. In walking along the track at night, it was the habit of the trackwalkers or watchmen to walk inside the rails. It was better walking on the inside. It was rough walking on the outside, and the walker or watchman could watch the track better walking on the inside. The river is very close to the track between the sink hole and Bernheimer. At times the river is up to the track and under the track. During the year 1927, there was heavy and continuous rainfall and the Missouri River was high. At times rock would slide down from the steep bluffs on the north onto the track, so large that they would have to be shot with dynamite to remove them.

When Sternberg's body was found beside the track there was a dent in his head, and there was black-looking engine oil and grease in his hair and on his clothing.

It appears that the defendant for the past ten years has kept trackwalkers and watchmen on duty between Bernheimer and the sink hole on account of the bad conditions of the track. There were two trackwalkers and watchmen on duty every day and night, and more than two in times of heavy rainfalls.

Clyde Collins testified: ''I worked as section hand of defendant between Bernheimer and Gore in 1927, repairing weak track conditions, such as the bank of the river giving away, and roadbed slipped away in different places, and slides came down in different places, rock and dirt landed by the side of the tract and on the track; part of my work was removing the rock and dirt, and repairing the bank. On one occasion dirt and rock soaked up with water and slid down on the track, about sixty or seventy feet long, came on the track and pushed the track out of line, twelve or fifteen feet in places on the track. I knew Fred Sternberg as trackwalker and watchman at

different times. He was engaged as such on November 6, 1927, and about two weeks prior thereto. He went to work at five o'clock and worked ten or twelve hours, always at night, generally walked the center of the track. He carried a white light, a red light, two red fuses, and six or nine torpedoes. His duties were to see that the track was in good shape, and if he found anything wrong with it to flag the trains.''

A. L. Mudd, who was employed as a conductor on train No. 4, but was unable to say whether or not he was in charge of the train on November 6, 1927, testified that he had orders to look out for trackwalkers and watchmen on the track in the vicinity of the sink hole. He stated further that this train always carried a headlight turned on when it gets dark or dusk.

Charles Barnhart, produced as a witness for defendant, testified that he was the conductor in charge of train No. 4 on the night of November 6, 1927. He further testified that the other members of the train crew on that train were Nick Owen, engineer, Richard Snell, fireman, H. E. Brook, brakeman, and W. E. Blackstone, porter, and that all of them were present at the trial at the instance of defendant, except the engineer, who was then dead. Defendant, however, did not call any of the members of the train crew to testify as witnesses except Barnhart, and he gave no testimony whatever as to the operation of the train, or the conduct of the trainmen with respect to the speed of the train, or the sounding of the bell or whistle, or with respect to the accident in which Sternberg came to his death. He merely testified that he was conductor in charge of the train. and gave the names of the members of the crew. He was not interrogated with respect to his knowledge of any facts relevant to the cause of the accident.

Fred T. Stocker, chief dispatcher of the defendant, testified, on behalf of the defendant, to the effect that on November 6, 1927, all trains were required to run at the reduced speed of ten miles an hour in the vicinity of the sink hole, but defendant offered no testimony to show that the speed of the train was in fact reduced to ten miles an hour, or that there was any reduction in the speed of the train between the sink hole and Bernheimer on the occasion in question.

E. E. Cornish, foreman of engineers and master mechanic, testified, on behalf of the defendant, that in his opinion a man struck by a moving locomotive running at ten miles an hour on a railroad track similar to the place known as the sink hole would be thrown to the side of the track very near the point where the man was struck.

Defendant offered no evidence whatever explanatory of the facts and circumstances in connection with the operation of the train on the night of November 6, 1927, between the sink hole and Bernheimer.

It was shown that the train running at a speed of 35 to 45 miles an hour could be brought to a stop within six or seven hundred feet.

Defendant assigns error for the refusal of its instruction in the nature of a demurrer to the evidence. In support of this assignment the defendant says (1) that Sternberg assumed the risk of being run over by defendant's trains, and (2) that there was no evidence to show negligence on the part of the defendant proximately contributing to Sternberg's death. Defendant relies on the well established rule that, under the Employers' Liability Act, an employee, in entering upon a contract of employment, assumes the risks ordinarily incident to the employment, and also assumes the extraordinary risks which are so plainly obvious and observable that he must be presumed to know and appreciate them, although such extraordinary risks may arise from the employer's negligence. While this rule is well established, the mere statement of the rule necessarily implies the converse thereof, that is, that the employee does not assume extraordinary risks arising from the negligence of the employer which are not plainly obvious and not known and appreciated by the employee. [O'Donnell v. Baltimore & Ohio R. Co., 324 Mo. 1097, 26 S. W. (2d) 929, l. c. 934; Oglesby v. St. Louis-San Francisco R. Co., 318 Mo. 19, 1 S. W. (2d) 172; Kidd v. Chicago, R. I. & P. R. Co., 310 Mo. 1, l. c. 37, 274 S. W. 1079; Southern Ry. Co. v. Smith, 205 Fed. 360; Hardwick v. Wabash R. Co., 181 Mo. App. 156, 168 S. W. 328; Norfolk & Western R. Co. v. Earnest, 229 U. S. 114; Osborn v. Chicago, R. I. & P. R. Co. (Mo.), 1 S. W. (2d) 181; Chesapeake & Ohio Ry. Co. v. Nixon, 271 U. S. 218; Delaware, L. & W. R. Co. v. Koske, 279 U. S. 7; Southern Pacific R. Co. v. Berkshire, 254 U. S. 415; Toledo, St. L. & W. R. Co. v. Allen, 276 U. S. 165; Chesapeake & Ohio R. Co. v. Leitsch, 276 U. S. 429; Boldt v. Pennsylvania R. Co., 245 U. S. 441; Pryor v. Williams, 254 U. S. 43; Missouri Pacific R. Co. v. Aeby, 275 U. S. 426; Hoch v. St. Louis-San Francisco R. Co., 315 Mo. 1199, 287 S. W. 1047; Martin v. Wabash Ry. Co., 325 Mo. 1107, 30 S. W. (2d) 735.] Of course, Sternberg, under ordinary circumstances, knew and appreciated the danger of being run down by an approaching train, but he did not know the danger to which he was being subjected by the negligence of the trainmen in violating a rule or custom known to him. He did not know, and was not required to anticipate that the trainmen would be guilty of such negligence. He did not know that the trainmen would not keep a lookout for him, slow down the train, and signal its approach by sounding the whistle, in accordance with the rule or custom long observed. It is manifest that he did not assume the extraordinary risk arising from such negligence on the part of the trainmen.

We think, too, the evidence warrants the finding that Sternberg's death proximately resulted in whole or in part from the negligence

of the trainmen. In taking this view we are are not entering the realm of conjecture, nor building inference on inference. It is a familiar rule that an essential fact may not be established on mere conjecture or speculation, or by building inference on inference, but this does not mean that such fact may not be established on circumstantial evidence. The fact that the catastrophe which happened to decedent was unseen will no more cut out a right to show by the circumstances the cause of its occurring than would the unseen commission of a crime prevent conviction upon circumstantial evidence. [Kelly v. Union Pacific R. Co., 141 Mo. App. 490, 125 S. W. 818.] Where an inference may be fairly drawn from the circumstances in evidence, in a death case, that the death was proximately caused or contributed to by the negligence of the defendant, a submissible case is made out for the jury. [Myers v. Pittsburgh Coal Co., 233 U. S. 184; Delaware, L. & W. R. Co. v. Hughes, 240 Fed. 941; Pecos & N. T. Ry. Co. v. Rosenbloom, 240 U. S. 439; Philadelphia & R. Ry. Co. v. Effinger, 299 Fed. 950; Overstreet v. Norfolk & W. Ry. Co., 238 Fed. 565.]

The rule, which has been uniformly adhered to in this state, that, in passing upon a demurrer, the evidence must be viewed in the light most favorable to plaintiff, obtains also in the federal courts. [Chesapeake & Ohio R. Co. v. Waid, 25 Fed. (2d) 366, 1. c. 367; Gulf, M. & N. R. Co. v. Wells, 275 U. S. 455, 1. c. 459; Western & Atl. R. Co. v. Hughes, 73 L. Ed. 473; McGovern v. Philadelphia & R. Ry. Co., 235 U. S. 389, 1. c. 401.]

The rule invoked, and chiefly relied on, by defendant that ordinarily there is no duty imposed upon the trainmen to look out for trackmen, section men, switch tenders, and like employees, working about or upon the track, is well established, but, as already shown, this rule has no application to the facts here. The circumstantial evidence shows almost beyond the peradventure of a doubt that Sternberg while in the line of his duty as a trackwalker and watchman was struck and killed by defendant's train No. 4. Besides, this much was practically admitted, if not expressly averred, by defendant, in its answer to the claim for compensation filed with the Missouri Workmen's Compensation Commission. It was Sternberg's custom and duty to walk between the rails of the track. It was necessary for him to do this to properly serve his master. He was about his master's business. He carried a white lantern lighted and burning. A red lantern was strapped on his back. There was a clear view between him and the approaching train for a distance of at least a mile. The train could have been stopped within a distance of six or seven hundred feet. Notwithstanding it appears that it was the duty of the trainmen to keep a lookout for Sternberg, slow down the train, and signal its approach, between the sink hole and Bernheimer, they did nothing of the kind, but ran the train through this

section at a high rate of speed without ringing the bell or sounding the whistle. For this court to say as a matter of law that the facts and circumstances in evidence are insufficient to warrant the finding that this negligence on the part of the trainmen proximately contributed to Sternberg's death would be to usurp the functions of the jury. To warrant such a finding it is not essential that all doubt be removed. It is only essential that the finding rest on a reasonable probability. A reasonable certainty is all that is required. We are not permitted to disturb the verdict of the jury upon a mere possibility or conjecture that the death may have proximately resulted from some cause other than the negligence of the trainmen.

The recent case of Atchison, Topeka & Santa Fe Ry. Co. v. Saxon, 52 Sup. Ct. Rep. 229, cited and relied on by defendant, is clearly distinguishable on its facts from the present case.

Instructions Nos. 1 and 2 given to the jury on behalf of plaintiff are complained of by defendant as erroneous. The chief complaint made against the instructions is based upon the theory that under the facts of this case no duty was devolved upon the trainmen to keep a lookout for trackwalkers and watchmen between the sink hole and Bernheimer. This complaint is necessarily ruled against defendant from what we have already said.

Instruction No. 1 is further complained of for advising the jury that there is a presumption in the absence of proof to the contrary that at the time the deceased was struck and killed he was in the exercise of ordinary care for his own safety. Defendant has not favored us with his reasons for this complaint against the instruction, but has been content to say merely that the instruction in this respect is "plainly erroneous and prejudicial." We have discovered no error in the instruction. It follows the law as declared by the courts of this state. [Buesching v. St. Louis Gaslight Co., 73 Mo. 219; Cahill v. Chicago & Alton Ry. Co., 205 Mo. 393, l. c. 403. 103 S. W. 532; Sing v. St. Louis-San Francisco Ry. Co. (Mo.), 30 S. W. (2d) 37, l. c. 41.]

There was no error in permitting plaintiff's counsel, in his argument to the jury, to comment on the failure of defendant to offer the members of the train crew as witnesses. Both from their relations to the defendant as its servants and their own personal interests in the result of the suit, they would naturally be disposed to favor the defendant in their testimony. The defendant could not relieve itself from the unfavorable inference to be drawn from its failure to produce its servants as witnesses, by bringing them into court, and inviting the plaintiff to put them on the witness stand and thus vouch for their credibility and bar herself of the privilege of cross-examining them. [Burns v. R. L. McDonald Mfg. Co., 213 Mo. App. 640, 252 S. W. 984; McClanahan v. St. Louis-San Francisco Ry. Co., 147 Mo. App. 386, 126 S. W. 535; Reyburn v.

Missouri Pacific Ry. Co., 187 Mo. 565, 86 S. W. 174; McCord v. Schaff, 279 Mo. 558, 216 S. W. 320.]

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Haid, P. J.,* and *Becker, J.,* concur; *Daues, J.,* not sitting.