LEARY RUBY, Administratrix of The Estate of SAM SAMPLES, Deceased, Appellant, v. O. C. CLARK.—No. 40214.—208 S. W. (2d) 251.

Division One, January 12, 1948.

Rehearing Denied, February 9, 1948.

*J. Grant Frye* and *Gerald B. Rowan* for appellant.

*Finch & Finch* and *Ward & Reeves* for respondent.

[252] BRADLEY, C.—Action to recover $10,000 for the alleged wrongful death of plaintiff's son. The trial court directed a verdict for defendant; verdict was returned as directed and judgment for defendant entered thereon. Plaintiff's motion for a new trial was overruled and she appealed.

Plaintiff alleged that deceased was struck and killed by an automobile driven by defendant and that she was the administratrix of his estate. It is alleged that deceased was killed on the night of January 29, 1944; that he left surviving no wife or child, natural born or adopted, and that plaintiff was dependent upon him; that deceased, when struck and killed, was walking across highway 61 at the intersection of said highway and 4th street in Portageville; that the death of deceased was caused by the negligence of defendant as follows: (1) That he drove said motor vehicle at a high and dangerous rate of speed under the circumstances; (2) that he failed to keep a lookout for other persons using said highway; (3) that he failed to keep his motor vehicle under control so as to be able to stop the same upon the reasonable appearance of danger; (4) that he drove said motor vehicle while drunk and while under the influence of intoxicating liquor; (5) that he drove said motor vehicle with the brake appliances in defective condition; (6) that after striking deceased he dragged his body approximately 100 feet along the highway giving deceased further injuries directly contributing to and accelerating his death; (7) that he failed to stop his motor vehicle and summon aid for the deceased who was wounded and permitted him to lie unattended along and on the highway when prompt and dutiful attention by the defendant and the securing of aid would have increased the probability of deceased surviving such injuries; and (8) that defendant saw deceased walking on said highway oblivious of the approaching motor vehicle of defendant and at such a distance from deceased that deceased was unable to get out of the path thereof but was in a position of imminent peril of being struck thereby at a time when defendant saw deceased in such position and circumstances and could have slowed down his motor vehicle, stopped the same, or turned it aside, but failed so to do. Except as to the admission that plaintiff was the administratrix of her son's estate, the answer was a general denial.

About 12:15 A. M., January 30, 1944, Sam Samples, age 45, was discovered mortally injured about 10 feet west of highway 61 in Portageville, New Madrid County, Missouri. He died shortly thereafter without making any statement. There was upon the back of the coat he wore an imprint indicating that the imprint was made by the grill of a 1937 model Chevrolet car. A small piece of a 1937 Chevrolet radiator ornament was found in the coat of deceased, and another piece of a 1937 Chevrolet radiator ornament was found 455 feet north of the place where deceased was found.

About 5 P. M., January 29, 1944, defendant borrowed Dee Wilson's two-seated, black, 1937 Chevrolet; about 11:30 that night he was at the home of Watt Espy about 4 miles [253] north and 5 miles west of Portageville; he was driving, so Espy testified, a two-seated, dark colored car. Espy, with a team of horses, pulled the car defendant was driving out of the ditch. Defendant left Espy's about midnight; went east towards Conran, on highway 61, about 5 miles east of Espy's, and about 4 miles north of Portageville. Espy said defendant was drunk when at his house. Shortly before deceased was found Bill Fisher was locking the door to the place where he worked on the east of highway 61 and the north side of Main Street in Portageville, and a block south of the place where deceased was found, and on the opposite (east) side of highway 61. While locking his door Fisher "heard something hit down there" (north). Then Fisher saw a car coming from the north on highway 61; this car turned west on Main Street at about 45 miles per hour.

Lyman Pemberton, whose wife is defendant's sister, lived about 4½ miles west of Portageville on the Pole road which is a continuation of Main Street. The 1937 Chevrolet that defendant was driving that night quit functioning about 3 miles west of Portageville and when it stopped it was facing west. Pemberton, with an International pickup truck, pulled the Chevrolet to defendant's cotton gin which was about 2½ miles west and about 4½ miles south of the point where the Chevrolet stopped. Pemberton had no time piece, but said it was "in the early part of the night" when defendant came to his house; that it was "between 8 o'clock and midnight." He said he was gone about 2½ hours and got back home before his wife had looked after the chicken brooder, and that she regularly did that about midnight. However, Clarence Hawkins, who lived about a half mile west of Pemberton, testified that he was up about 1 o'clock that night; that he heard a horn blowing out in front and went to the door; that he "saw a car and a pick-up truck"; that these were close together facing west, the truck in front; that they went on west. On the way to the cotton gin they saw a white rabbit and defendant, or defendant and Pemberton, ran it down and took it along. Pemberton pulled defendant and the Chevrolet to defendant's cotton gin and then returned home. Pemberton said that defendant was not drinking.

Defendant, in a Pontiac he owned, left the cotton gin about the time Pemberton left; said he was going to the Ozarks to look after some cattle. Trooper I. E. Beard arrived at Portageville about 1 A. M., January 30th, to make investigation as to· the death of deceased. Beard saw defendant about 3 A. M., January 30th, on highway 61 about 6 miles south of Portageville. At that time defendant was driving south in a Pontiac; was intoxicated and "was weaving over the road." Soon after Beard saw defendant he (defendant) stopped at Belle's Cafe and Cabins owned by him; said he "was going to rest awhile"; had a white rabbit in his car. Beard had no information then that·defendant would be concerned in any way with the death of deceased. He ascertained that defendant's driver's license had expired; "gave him a summons (on his driver's license) for a certain date" and left him. Defendant told Beard that he was on his way to the Ozarks to look after some sick cows, and that he would "come in as soon as" he returned.

Aaron Carnahan, an automobile mechanic of 25 years experience; in a few days after deceased was killed, examined the Wilson Chevrolet that defendant drove the night of January 29th; found the radiator broken and damaged, and gave it as his opinion that after receiving such injury the car would not have run more than 3 or 4 miles; it was about 3 miles west of Portageville to the point where the Wilson Chevrolet defendant was driving that night quit functioning. The small piece of the radiator ornament found in the coat of deceased, and the larger piece of radiator ornament found 455 feet north of the place where deceased was found came from the Wilson Chevrolet that defendant drove that night. The imprint on the back of the coat of deceased corresponded with the radiator grill on the Wilson Chevrolet. It was plaintiff's theory that deceased was ·struck 455 feet north of the point where he was found and that his body was carried on the bumper the 455 feet.

Defendant contends that there was no substantial evidence tending to show that he [254] was driving the car that struck deceased, but that if the court should rule otherwise on that question he then says there was no substantial evidence that he was guilty of any act of negligence charged. And he says that there was no substantial evidence tending to show causal connection between any act of negligence charged and the injury and death of deceased.

Plaintiff relies upon the circumstances in evidence to support her case. Where an inference may be fairly drawn from the circumstances in a death case that the death was proximately caused or contributed to by the negligence of the defendant, a submissible case is made for.the jury. Hasenjaeger v. Missouri-Kansas-Texas R. Co., 227 Mo. App. 413, 53 S. W. (2d) 1083, l. c. 1086, and cases there cited. The small piece of the radiator ornament from the Wilson Chevrolet found in the coat of the deceased, and the grill imprint on

the coat that compared favorably with the grill on the Wilson car were telltale circumstances and constituted substantial evidence that it was the Wilson car that struck and killed deceased. But, as appears supra, defendant says that there was no substantial evidence that he was driving the Wilson car at the time deceased was struck. Defendant, about midnight and about 15 minutes before deceased was found on the pavement in a dying condition, left Espy's driving a two-seated black car towards Conran, which was 5 miles east of Espy's and 4 miles north of Portageville on highway 61. Deceased was found about 12:15 A. M., 15 minutes after defendant left Espy's. Shortly before deceased was found Bill Fisher, a block south of the place where deceased was found, "heard something hit" up towards the Texaco station. Immediately after Fisher heard something hit he saw a car coming south which car turned west on Main Street, Portageville, at about 45 miles per hour. The Wilson Chevrolet stopped running as defendant told his brother-in-law Pemberton, and the point where it stopped was about 3 miles west of Portageville on the road which was a continuation of Main Street. Witness Carnahan said that the Wilson car radiator was in such condition that the car would not have run more than 3 or 4 miles after receiving such an injury. Pemberton, with a pick-up truck, pulled the Wilson Chevrolet from the place where it stopped to defendant's cotton gin and on the way passed the home of Clarence Hawkins. About 1 o'clock that night, Hawkins saw a car and a pick-up truck which were close together, truck in front, both headed west, pass his place.

All these circumstances are consistent with the hypothesis that defendant was driving the Wilson Chevrolet when it struck deceased and constitute substantial evidence tending to show that he was. It is true that Pemberton said that defendant came "in the early part of the night" to his house to get him to pull the car to the cotton gin, but Pemberton also said that it was "between 8 o'clock and midnight." "Facts necessary to sustain a recovery in a civil case may be proven by circumstantial evidence, but the facts and circumstances proven must be such that the necessary facts to support a verdict may be inferred and must reasonably follow. Such evidence must exclude guesswork, conjecture, and speculation as to the existence of the necessary facts." Bates v. Brown Shoe Co., 342 Mo. 411, 116 S. W. (2d) 31. The Bates case is cited in Schoen, Admx. v. Plaza Express Co: et al., 206 S. W. (2d) 536. The Schoen case, like the present case, was a death case, and like the present case rested on circumstantial evidence, and the trial court directed a verdict for defendant as in the present case. It is held in the Schoen case that the verdict was properly directed, but the circumstances there were not so consistent with plaintiff's case as here. And the same is true as to the Bates case, supra. We think the question as to whether defendant was driving

324

the Wilson car when it struck deceased was for the jury. State v. Tucker, 339 Mo. 101, 96 S. W. (2d) 21.

 Was there any substantial evidence to support submission on any of the acts of negligence charged, and if so, was causal connection shown? The inference, we think, is fair that deceased was carried on the bumper the 450 odd feet from the point where struck to the point where his body was found. Also, the inference is fair that what witness Fisher heard when he "heard [255] something hit" was the striking of deceased by the Wilson Chevrolet driven by defendant as he was driving south on highway 61. Also, the inference is fair that the southbound car that Fisher saw immediately after he heard something hit, and that turned west on Main Street at 45 miles per hour, was the Wilson Chevrolet driven by defendant. It appears that highway 61 runs north and south through Portageville, but there was no evidence as to the number of business places open along the highway at the time Fisher heard something hit. Mae Whitledge, at the time, operated a cafe and service station on the west side of highway 61, a block north of Main Street. She closed about midnight or some time between 12 midnight and 12:15 A. M. An east and west street ran along the north side of her place. Across the street north was the Texaco station. Mae Whitledge left her place in a car and as she was turning west on the street on the north side of her place discovered the deceased lying about 10 feet west of the highway and in front and east of the Texaco station. The area between the west side of the highway and the Texaco station is paved with concrete, but the distance from the highway to the station is not shown. From all these circumstances we think the inference arises that defendant, in the situation, was driving at a dangerous rate of speed. Many grounds of negligence were alleged, but the motion for a directed verdict was general, hence the motion should have been overruled if plaintiff made a case on any ground of negligence alleged. Benzel v. Anishanzlin (Mo. App.), 297 S. W. 180, 1. c. 182, and cases there cited.

 In ruling the motion for a directed verdict the trial court said: "We can't decide lawsuits on guesses and that is the reason why the court is sustaining this motion for a directed verdict because of the lack of proof showing that this defendant was there and was guilty of negligence and if he was negligent, how was he negligent? What did he do? *Did the other fellow do anything that caused this accident?*" (Italics ours.) So it would appear that the trial court, in sustaining the motion for a directed verdict, took into consideration the possible contributory negligence of deceased. Defendant did not plead contributory negligence, and besides, under the facts, it will be presumed that deceased was in the exercise of ordinary care. Bragg v. Ohio Chemical & Mfg. Co., 349 Mo. 577, 162 S. W. (2d) 832; Whiteaker v. Mo. Pac. R. Co. (Mo. App.), 15 S. W. (2d) 952.

We think plaintiff made a submissible case and that the motion for a directed verdict should have been overruled. The judgment should be reversed and the cause remanded, and it is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.