Benjamin F. Bell, Appellee, v. Raymond McMullen, Appellant.

Gen. No. 9,470.

Heard in this court at the October term, 1945. Opinion filed October 23, 1945. Released for publication November 19, 1945.

CLARENCE W. HEYL, of Peoria, for appellant.

J. M. POWERS, of Pekin, for appellee.

MR. JUSTICE WHEAT delivered the opinion of the court.

This is a negligence action arising out of a collision of two automobiles. The jury returned a verdict for plaintiff in the sum of $3,250, and upon remittitur, judgment was entered in the sum of $2,500, from which defendant appeals.

The collision happened on March 26, 1941, at about 8 p. m. in Tazewell county, Illinois, in or near the intersection of routes 121 and 122, about six miles east of Delavan. Concrete highway 121 extends in a northerly and southerly direction; it is intersected by another concrete highway, route 122, which extends westerly from route 121 but not easterly therefrom; the paved portion of route 121 at the intersection is

straight in a northerly and southerly direction, but the paved portion of route 122 at the intersection is forked or "Y" shaped, with the north fork curving northeasterly into route 121 and the south fork curving southeasterly therein; both forks being level. Plaintiff was alone in a panel body Chevrolet truck and had been going north until he turned west into route 122. Defendant was alone in a Packard car, going south. The only other traffic at the time was a north bound truck in the rear of plaintiff's truck.

Plaintiff charges that he had been driving northerly on route 121 and turned westerly on the south fork of route 122 and had progressed about 20 feet west of the west line of route 121 when his truck was struck by the car of defendant who had theretofore been travelling south on route 121.

As one of the grounds for reversal, defendant contends that the verdict and judgment are against the manifest weight of the evidence. It is necessary to set forth briefly that part of the evidence relating to the occurrence for a proper consideration of this point.

Plaintiff testified that he was 73 years of age; that he was returning home to Kingston Mines, near Pekin, from Springfield; that he was familiar with this intersection; that as he approached it at a speed of five to ten miles per hour he saw the lights of another car coming south at a speed of about 50 to 60 miles per hour, weaving back and forth across the black line in the middle of route 121, about 300 feet away; that he opened his left door and looked back to see if anyone was coming and saw the lights of a truck about four-tenths of a mile in the rear; that he turned left and when about 20 feet west of the west line of route 121, the car of defendant came cater-corner across and hit his truck near the right door; that at the moment of impact he was going five miles per hour; that he was slowing down "because I had no business on that road and wanted to go back"; that the truck was thrown

over on its side and when he was assisted out, the Packard was jammed into his truck; that skid marks extended northerly 12 feet from defendant's car; that he saw these by the lights of the truck which had been back of him and had stopped nearby after the collision.

Upon cross-examination, he stated his truck travelled 170 feet from the point where he started to turn until the collision occurred, during which time defendant's car travelled 300 feet. He also stated, "I would say I crossed the pavement, when I seen him coming at me I stepped on the gas, just like that, and shot my car—if you want the truth of it, I will try to tell you. Well then, when I started across there, I was travelling, say about ten miles per hour, when I stepped on the gas just to jam my truck right across there, and as soon as I got crossed I commenced to slow down and wasn't going over five to ten miles per hour when he hit me"; that before he turned left he saw defendant's car approaching at a high rate of speed and had seen it coming for some time before that, and he knew when he turned across its path it was going at a high rate of speed; that he could have stopped right there; that on the taking of a deposition he testified that when he started to turn, the defendant's car was four or five car lengths from him and that he did not intend to turn there to go into Delavan but intended to turn farther north to go into Pekin.

Plaintiff produced only one other witness, Ralph Nafziger, who testified that he lived a mile south and a quarter of a mile east of the intersection; that he knew neither of the parties; that he drove right away to the scene of the accident; that the truck was on its side on route 122, the distance being about 20 feet from the middle of the truck to the west line of route 121; that the Packard car was entirely on route 121, facing south on the west side thereof near three white posts; (the photographs in evidence indicate that these three posts are along the west side of route 121 just north

of where the south fork of route 122 intersects the same).

On behalf of the defendant, the witness, Aaron Martin, testified that when he arrived at the scene of the accident, there were five or six cars there; that the Packard car was on route 121 near the white posts; that tire marks appeared extending about 20 feet north and back of the Packard; that he did not recall any skid marks south or west of the intersection or off of route 121; that he helped push the Packard car off of the highway to the south end of the "Y" on the west side of the road, south of where the truck was lying.

Mrs. Rose Kelley testified that when she arrived she saw a panel truck, a Packard, and another truck; that the panel truck was over on its side on the edge of route 122, the Packard was on route 121 near the white posts; skid marks showed on route 121 north of the intersection; the Packard was some distance from the panel truck.

The witness, James Brasel, testified that he was driving his truck northerly on route 121; that a quarter of a mile south of the intersection he came up behind the plaintiff's truck and started to pass; that the panel truck pulled over in front of him and witness directed his truck to the right side of the highway; that he flickered his lights and started to pass a second time and the panel truck again pulled over in front of him; witness saw a car coming from the north and pulled back to the east side of the highway when he was about 50 feet from the intersection; he saw the collision; the car coming from the north was on the west side of the road and did not wobble back and forth over the center line before the collision; he had driven a truck for 20 years and had driven two or three hundred thousand miles; that defendant's car was travelling 20 to 25 miles per hour; at the time of the collision, defendant's car was going 15 miles per hour and the truck of plaintiff between 15 and 20 miles

per hour; almost past the intersection the panel truck turned directly across the highway; "well it looked to me like he just reached up and got the wheel and pulled it right straight across the pavement"; the truck turned over on route 121 and slid across; when the vehicles came to rest they were about 10 to 12 feet apart; the panel truck was not over 8 or 10 feet west of the west line of route 121 and the vehicles remained in this position for quite some time; after the collision he went slightly north, stopped, and put out flares; the witness, Mrs. Kelley, drove up and he gave her flares to flag traffic; the Packard was headed south and he helped to move it to the south and west; the panel truck went about 8 or 10 feet after being hit; it scooted sideways just a little and then turned over; it did not go over 20 feet after the impact and the Packard didn't go over 8 feet; the one back wheel of the Packard was setting across the center line of route 121 about two feet and the south wheels were in the west lane.

Defendant testified that on the day in question he had his car brakes adjusted and the front wheels trued up at a Peoria garage pursuant to a previous arrangement; that new tires had been put on a day or so before at the same garage; that the mechanical condition of the car, including brakes, was perfect; that he had driven a car since 1908; that as he travelled south towards the north fork of route 122 his speed was between 40 and 50 miles per hour; that he saw the lights of two cars approaching from the south; that at the north fork of the "Y" his speed was 35 miles per hour; that he was at all times on the west side of the black center line; that he was 40 feet from plaintiff when the latter turned suddenly left; he applied his brakes; the right front of the Packard struck the right front of the truck on route 121 north of the north side of route 122, between that point and the white posts; defendant's car did not travel over 8 or 10 feet after

the collision and when stopped was on the right or west lane of route 121; plaintiff's truck was then on its side in the south lane of route 122; that the Packard could not be moved under its own power but that later it was pushed south across the width of route 122 on to the shoulder of route 121 to the rear of plaintiff's truck; that in a conversation with plaintiff about May 2, 1941, the former said that he did not intend to turn at that point; witness stated that the Packard was not moved until after the witnesses Nafziger and Martin arrived; that tire marks extended northly from his car for 8 or 10 feet, none of which went onto the north edge of route 122 nor west into the space between where the collision occurred and where the truck was lying on its side.

Defendant urges that the verdict was against the manifest weight of the evidence, particularly on the issue of due care of the plaintiff. This is not the same as the issue raised in determining whether or not plaintiff was guilty of contributory negligence as a matter of law.

As to the latter the test is whether all reasonable minds would reach the same conclusion that the conduct of the plaintiff was violative of rational standards of conduct applicable to persons in similar situations, to be determined by a consideration of only the uncontradicted facts and the evidence that is favorable to plaintiff. (*Budds v. Keeshin Motor Exp. Co., Inc.,* 326 Ill. App. 59.)

As to the former it is fundamental that the issue of due care is a material one in a negligence case and must be alleged in the complaint and proved by a preponderance of the evidence. (*Urban v. Pere Marquette R. Co.,* 266 Ill. App. 152; *Illinois Cent. R. Co. v. Oswald,* 338 Ill. 270.) As to whether the verdict and judgment are contrary to the manifest weight of the evidence, this must therefore be determined as on any other material issue, by a consideration of all the evidence.

The evidence clearly shows that the plaintiff, an elderly man, was undecided whether or not this was his turn into Pekin; he said he knew he had no business on that road and that he did not intend to turn there to go into Delavan but intended to turn farther north to go into Pekin; he suddenly swerved his car from its northly direction on route 121 to the left in front of the car of defendant; that before he turned left he saw defendant's car approaching at a high rate of speed and had seen it coming for some time before that and he knew when he crossed its path it was going at a high rate of speed; that he could have stopped his car right there; that he "shot his car" and "stepped on the gas just to jam my truck right across." In his deposition, he testified that the car of defendant was only four or five car lengths in front of him when he started to turn.

As to the location of the point of impact on the pavement, plaintiff is not corroborated in his statement that it occurred about 20 feet west of the west line of route 121, in route 122, by his own witness, Ralph Nafziger, who stated that the Packard was entirely on route 121, facing south on the west side thereof. Three witnesses for the defendant, besides himself, likewise so testified, as well as to skid marks north of where the Packard was located. The witness, James Brasel, testified that when plaintiff was almost past the intersection he turned directly across the highway; he said, "Well, it looked to me like he just reached up and got the wheel and pulled it right straight across the pavement"; he also stated the collision occurred on route 121.

Defendant also urges that plaintiff violated the provisions of par. 166, ch. 95½, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 85.198], which provides as follows: "Any driver of a vehicle approaching an intersection with the intent to make a left turn shall do so with caution and with due regard for traffic approaching from the opposite direction and shall not

make such left turn until he can do so with safety." That this section applied to the intersection in question is stated in the case of *Geschwindner v. Comer,* 222 Ill. App. 417, wherein it is said that when a street runs into and ends at another street, they intersect within the meaning of statutes or ordinances governing the right of way of vehicles at intersecting streets. In the case of *Edwards v. Hill-Thomas Lime & Cement Co.,* 378 Ill. 180, the Supreme Court approved an instruction substantially in the language of the statute.

■■ From the foregoing, it is apparent that the verdict and judgment are clearly against the manifest weight of the evidence on the question of due care of the plaintiff and any actionable negligence of defendant.

It is unnecessary to discuss other errors assigned relating to instructions and errors committed during the trial, for if the case is retried, these questions, doubtless, will not arise again.

For the reasons above given, the judgment of the circuit court of Tazewell county is reversed and the cause remanded.

*Reversed and remanded.*