Britta Randolph, Administratrix of Estate of Howard Randolph, Deceased, Appellee, v. New York Central Railroad Company, Appellant.

Term No. 4709.

Opinion filed February 25, 1948.   Rehearing   denied   May   25,   1948.   Released   for   publication May 28, 1948.

COMBE & TWENTE, of Harrisburg, for appellant.

RUMSEY & DENNIS, of Harrisburg, for appellee.

MR. PRESIDING JUSTICE BARTLEY delivered the opinion of the court.

Plaintiff appellee, Britta Randolph, as administratrix of the estate of Howard Randolph, deceased, on behalf of herself, her six minor children, and her two adult children, brought an action at law against the defendant appellant, the New York Central Railroad Company, to recover damages for her husband's death on October 14, 1945, when a truck owned and operated by him was struck by a train operated by the defendant at a street crossing within the corporate limits of Harrisburg, Illinois. Defendant's motions for a directed verdict, at the close of plaintiff's evidence and

again at the close of all the evidence, were denied. A jury returned a verdict for $5,000 in favor of plaintiff. Motion for judgment notwithstanding the verdict was overruled and judgment was rendered on the verdict. Defendant did not file a motion for a new trial. In this appeal defendant asks that the judgment be reversed and judgment be entered for defendant.

■ The principal question here is whether or not there is any evidence which, with any legitimate inference that may be legally and justifiably drawn therefrom, tends to show the use of due care on the part of plaintiff's intestate, and if there is, then such question of due care is a question of fact for the jury. *Greenwald v. Baltimore & O. R. Co.*, 332 Ill. 627; *Thomas v. Buchanan*, 357 Ill. 270.

There were three counts in the complaint; the first charged that the defendant so negligently and carelessly and improperly managed, controlled and operated said engine and train of cars in approaching said public highway so as to cause the injury and death; the second count charged that defendant failed to ring a bell or blow a whistle, as required by the statute; the third count charged that the defendant negligently and carelessly operated said engine and train at a high and excessive rate of speed, thereby causing the injury and death.

The accident occurred at about 6:42 a. m. on Sunday, October 14, 1945, at a public crossing known as No. 9 crossing, at the southeast corner of the corporate limits of Harrisburg, Illinois. It occurred on Barnett street which runs east and west. The railroad tracks cross at almost a right angle and run in a general northerly and southerly direction. The railroad crossing consists of double tracks, the east track being the main track and the west track being the side track. South Grange street intersects Barnett street about three blocks west of the crossing, and South Webster street intersects at a block to the east of South Grange

street. The surface of Barnett street is graveled and is down grade from Webster street to the crossing, the decline in the 75 feet next to the crossing being about 1/10 foot. Barnett street continues east from the crossing where it runs into Route 45 going to Harrisburg, and continues on another ¼ mile where it intersects Route 34, and then goes on into Gaskins City. The crossing was a frequented highway. The railroad tracks coming from what is known as Pauper crossing, about 5/8 mile southwest of the crossing in question, are built on a gradual curve, and a more sharp curve as they near the crossing in question, said curve turning to the north all the way until it reaches the crossing. There was a railroad crossing sign with two cross arms about five feet in length located on the south side of Barnett street west of the crossing, about 39 feet from the center of the east track. The sign was about 10 feet high with the word "Railroad" on one arm and the word "Crossing" on the other arm, and the sign "Two Tracks" below the cross arms. Barnett street, at the crossing, was about 29 feet in width and the distance between the west rail of the east track and the west rail of the west track was 18 feet.

The crossing surroundings were rural in character. One of plaintiff's witnesses, Harry Hill, resided just east of the crossing on the north side of Barnett street. There was a house on the southeast corner of the crossing. As you approach the crossing from the west on Barnett street, there is a slaughterhouse and packing plant located between the railroad and south of Barnett street; as you proceed eastward, there is a sawmill shed located east of the packing plant and between the railroad and Barnett street, about where the sharp curve starts toward the crossing. Further to the east of the sawmill shed, there is an embankment which had been built and formerly used as a "high track" by an old mine. There was conflicting evidence con-

cerning the height and location of this embankment. The embankment began just south of the crossing and was adjacent to the railroad tracks to the west. The evidence on behalf of the plaintiff in regard to where the embankment began south of the crossing varied; distances were given as between 30 or 40 feet to 150 feet, south of the crossing. One of plaintiff's witnesses testified that the embankment was closer to the highway on the day of the accident than it was on the day of the hearing and that a portion of it had been moved. There was evidence on behalf of the plaintiff that the embankment was from 8 to 10 feet high, and that there were bushes and weeds and persimmon sprouts between 10 and 15 feet high, growing on the embankment and that this embankment ran along the curve of the railroad down to about the sawmill. There was also evidence for the plaintiff that there were staves piled up high on the embankment near the sawmill and towards the highway.

The evidence for the plaintiff shows that the view of the railroad tracks to the south of Barnett street, to one approaching the railroad crossing from the west, was obstructed first, by the packing plant, next by the sawmill and finally by the embankment which was covered with weeds and on which were piled stacks of staves. One approaching from the west was not able to see more than about 75 feet of the track when about a half block from the crossing and upon reaching a point 10 to 15 feet west of the west rail of the west track, which is the place one usually looks before crossing, it was possible to see about 200 feet down the track and upon reaching the west rail of the west track, one could not see the front end of the engine of a train coming from the south, until it was within 300 feet of the crossing.

The deceased was seen by one of the plaintiff's witnesses, driving east on Barnett street in an International truck, at a rate of about 10 to 15 miles per hour,

about two blocks from the railroad crossing, and another witness saw him driving at about the same rate of speed until he was about 20 feet from the crossing.

The train which struck the deceased was not a regular train, but was a special train which was deadheading from Cairo, Illinois to Mt. Carmel, Illinois. It consisted of the engine, the tender, a baggage coach and a caboose. It was admitted by defendant that the bell was not rung for the crossing because it was out of order. Plaintiff's witnesses who were in a position to hear the train whistle, testified that it did not whistle for the crossing and that the first whistle that was blown was when the truck was struck. The train continued on for about 1320 feet before it could be stopped after the collision. There was some testimony for the plaintiff that the train was going fast, and defendant's evidence showed that it was going 40 miles per hour. A train traveling 40 miles per hour would travel 58.7 feet per second. The train was not traveling on schedule but was running ahead of a freight train and had to stop at Harrisburg to take on coal and water.

As the train went past the crossing, the engineer was on the right-hand side of the engine at his regular station and was looking north through the front window and from that position could not see Barnett street, which came in from the west to the crossing. The first he knew of the accident was when the train hit the truck. The fireman did not see the truck before the train struck it as he was checking the water level in the boiler as the train approached the crossing. The brakeman was riding on the rear end of the caboose and testified that when he was about 350 feet south of the crossing, he first noticed the deceased's truck and that it was about 10 feet west of the sidetrack; that it was running about 10 miles an hour and that when he last saw the truck before the accident, he could see about three feet of the rear end of it and that the truck did not change speed

or swerve to the right or left. He did not testify that he saw the deceased. There was no actual eyewitness as to how the accident occurred or what the deceased did. At the time of the accident the weather was misty.

The deceased was 44 years of age at the time of his death and the evidence shows that he was a sober, strong, healthy man. He went to church regularly and stayed at home nights with his family; he was thrifty and industrious, and able to work regularly.

██ The questions before the court are whether or not there was sufficient evidence of negligence, proximate cause and due care and caution on the part of the deceased to submit the case to the jury. As to whether or not a person is in the exercise of due care and caution for his own safety, it is not indispensable that it should be established by direct proof. It may be shown by circumstantial evidence, or, it may be inferred by the jury from circumstances appearing in the proof. *Chicago & E. I. R. Co. v. Beaver,* 199 Ill. 34; *Illinois Cent. R. Co. v. Nowicki,* 148 Ill. 29; *Lauer v. Elgin, J. & E. R. Co.,* 305 Ill. App. 200. Where there is no eyewitness who can testify concerning decedent's conduct at the time of and immediately prior to the accident resulting in decedent's death, proof that deceased was a sober, strong, healthy, industrious and thrifty man and able to work regularly, tends to prove due care on the part of the deceased and makes the issue of contributory negligence a question of fact for the jury. *Chicago & E. I. R. Co. v. Beaver,* 199 Ill. 34; *Lauer v. Elgin, J. & E. R. Co.,* 305 Ill. App. 200; *Illinois Cent. R. Co. v. Nowicki,* 148 Ill. 29.

In a case somewhat analogous to the one here, the Supreme Court of the United States in the case of *Pokora v. Wabash R. Co.,* 292 U. S. 98, at page 101 said: "In such circumstances the question, we think, was for the jury whether reasonable caution forbade his going forward in reliance on the sense of hearing, un-

aided by that of sight. No doubt it was his duty to look along the track from his seat, if looking would avail to warn him of the danger. This does not mean, however, that if vision was cut off by obstacles, there was negligence in going on, any more than there would have been in trusting to his ears if vision had been cut off by the darkness of the night. *Cf. Norfolk & W. R. Co. v. Holbrook* (C. C. A. 6th) 27 F. (2d) 326. Pokora make his crossing in the daytime, but like the traveler by night he used the faculties available to one in his position. *Johnson v. Seaboard Air Line R. Co.* 163 N. C. 431, 79 S. E. 690, Ann. Cas. 1915B, 598, 4 N. C. C. A. 627; *Parsons v. Syracuse, B. & N. Y. R. Co.* 205 N. Y. 226, 228, 98 N. E. 331. A jury, but not the court, might say that with faculties thus limited, he should have found some other means of assuring himself of safety before venturing to cross. The crossing was a frequented highway in a populous city. Behind him was a line of other cars, making ready to follow him. To some extent, at least, there was assurance in the thought that the defendant would not run its train at such a time and place without sounding bell or whistle. *Louisville & N. R. Co. v. Summers* (C. C. A. 6th) 125 Fed. 719, 721; Illinois Rev. Stat. 1933 ed. chap. 114, par. 84. Indeed, the statutory signals did not exhaust the defendant's duty when to its knowledge there was special danger to the traveler through obstructions on the roadbed narrowing the field of vision. *Wright v. St. Louis-San Francisco R. Co.* 327 Mo. 557, 566, 37 S. W. (2d) 591; *Hires v. Atlantic City R. Co.* 66 N. J. L. 30, 48 Atl. 1002; *Cordell v. New York, C. & H. R. R. Co.* 70 N. Y. 119, 26 Am. Rep. 550. All this the plaintiff, like any other reasonable traveler, might fairly take into account. All this must be taken into account by us in comparing what he did with the conduct reasonably to be expected of reasonable men.''

 ██ The rule is that a motion to direct a verdict should be allowed, if, when all the evidence is con-

sidered with all reasonable inferences to be drawn therefrom in its aspects most favorable to the party against whom the motion is directed, there is a complete failure to prove one or more necessary elements of the case, and the same is applicable upon a motion for judgment notwithstanding the verdict. *Carrell v. New York Cent. R. Co.,* 384 Ill. 599; *Illinois Cent. R. v. Oswald,* 338 Ill. 270; *Goodrich v. Sprague,* 376 Ill. 80. The affirmative of the rule is that, if, after the court has considered the evidence produced on the part of the plaintiff, most strongly in plaintiff's favor, and, if, after giving to it every reasonable intendment favorable to plaintiff, it should find that there is any evidence standing alone, which tends to prove the charges of the complaint, the motions should be denied.

A railroad company is required to exercise ordinary care and prudence in operating its trains to prevent injury to those who travel upon a public highway crossing its tracks and the standard of care is that of ordinary care under the surrounding facts and circumstances, and such precaution as prudent management for public safety requires. It must ring its bell or blow its whistle in accordance with the statute, and must operate its trains at a reasonable rate of speed depending on the conditions of the particular situation, and having regard to the demands of public commerce for the necessity of speed. If it is derelict in any of these duties, the results of which are proximate cause of injuries, the railroad company is liable for injuries to one who is in the exercise of due care and caution for his safety. *Wagner v. Toledo, P. & W. R.,* 352 Ill. 85; *Chicago & R. I. R. Co. v. Still,* 19 Ill. 499; *Humbert v. Lowden,* 385 Ill. 437; *Goodrich v. Sprague,* 376 Ill. 80; 44 Am. Jur. under the title "Railroads," pars. 493, 510, 511.

Motorists have the right to presume that trains will be operated in a proper and skillful manner

unless they are charged with knowledge that such is not being done. *Humbert v. Lowden,* 385 Ill. 437.

The evidence here on behalf of plaintiff, with its legal inferences in its aspect most favorable to the plaintiff, shows that deceased was driving his truck at about 10 to 15 miles per hour as he approached the railroad crossing in question; that his view of trains approaching from the south was obstructed by a packing plant, a sawmill and an embankment; that as he reached a point about 10 or 15 feet west of the first track, he could see a train approaching from the south a distance of about 200 feet and that when he reached the west rail of the first track, he could see a train approaching at a distance of about 300 feet which was the maximum distance he could see the train approaching from any point. There was no direct evidence that deceased was negligent in operating his truck. He was a sober, strong, healthy and industrious man, which indicates that he was possessed of all of his faculties. It is admitted that no bell was rung; the train was a light one which would not make much noise; no whistle was sounded until the impact of the accident; no lookout was being maintained; and the train was traveling at a high rate of speed. It is our opinion from the evidence of the accident and the circumstances surrounding the same, that it must be presumed that deceased was in the exercise of ordinary care for his own safety at the time of the accident, sufficient to make the issue of contributory negligence a question of fact for the jury. The facts of the case also show that there was sufficient evidence on the question of negligence and proximate cause to submit the cause to the jury.

We find no error in the record and the judgment of the circuit court of Saline county is hereby affirmed.

*Judgment affirmed.*