GULF, MOBILE AND OHIO RAILROAD COMPANY, a Corporation, Appellant,

v.

Frieda LARKIN, Administratrix of the Estate of Donald Larkin, Deceased, Appellee.

No. 16960.

United States Court of Appeals Eighth Circuit.

Aug. 28, 1962.

Alphonso H. Voorhees, of Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, Mo., made argument for the appellant and filed brief.

Don B. Sommers, St. Louis, Mo., made argument for the appellee and Harry Gershenson, Barnhart & Sommers, St. Louis, Mo., were with him on the brief.

Before VOGEL, VAN OOSTERHOUT and MATTHES, Circuit Judges.

VOGEL, Circuit Judge.

Frieda Larkin, administratrix of the estate of Donald Larkin, deceased, plaintiff-appellee, commenced this action against Gulf, Mobile and Ohio Railroad Company, a corporation, defendant-appellant, to recover damages because of the alleged wrongful death of her husband, who was killed when he drove his automobile into the side of defendant's freight train. The suit was originally commenced in the Circuit Court of the City of St. Louis, Missouri. Thereafter it was removed to the United States Dis-

trict Court for the Eastern District of Missouri upon grounds of diversity of citizenship and involvement of the requisite amount. Trial to a jury resulted in a verdict and judgment in plaintiff's favor for $15,900. Defendant moved for a directed verdict at the close of plaintiff's testimony and at the close of all testimony, and subsequently made its motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. Upon their being overruled, defendant appealed.

The law of the State of Illinois governs the rights of the parties. It is conceded here that, under the law of that state, the burden was upon the plaintiff and it was part of plaintiff's case to prove that Donald Larkin was in the exercise of ordinary care—this in addition to establishing negligence on the part of the defendant. Kuhnert v. Whalen, 1961, 30 Ill.App.2d 198, 174 N.E.2d 222; Lorts v. McDonald, 1958, 17 Ill.App.2d 278, 149 N.E.2d 768; Ames v. Terminal R. Ass'n of St. Louis, 1947, 332 Ill.App. 187, 75 N.E.2d 42, 45; Bell v. McMullen, 1945, 327 Ill.App. 12, 63 N.E.2d 523, 526; O'Leary v. Illinois Terminal R. Co., 1957, Mo., 299 S.W.2d 873. See also Fort Dodge Hotel Co. v. Bartelt, 8 Cir., 1941, 119 F.2d 253.

It is the primary contention of the defendant on appeal that the plaintiff failed to carry such burden of establishing that Donald Larkin was in the exercise of ordinary care. Additionally defendant contends that the evidence affirmatively shows, as a matter of law, that Donald Larkin was guilty of negligence which was a proximate cause of the accident and his death.

In consideration of this appeal, we must take that view of the evidence most favorable to the sustaining of the jury verdict and must accept all reasonable inferences which tend to support the jury's conclusion.

There is little contradiction in the evidence. The accident occurred on March 17, 1960, about 9:55 P.M. in Murphysboro, Illinois, at a point where the defendant's railway tracks running north and south intersect Gartside Street, which runs east and west. At this point there are five of the defendant's tracks crossing Gartside Street. One of its freight trains was standing still, occupying the fourth track from the east. The train consisted of some 133 cars. The 39th boxcar from the north blocked the street crossing with its wheels straddling the street. The train was northbound. It had stopped in Murphysboro to pick up 38 additional cars. At the time of the accident the cars had already been coupled and the brakeman was in the process of checking the brake valves. When this was completed, the train had yet to pick up the caboose before proceeding on its way.

The tracks were up a slight grade approximately three feet above the street level. The night was dark, the weather clear, the streets dry. 17th Street parallels the defendant's right-of-way and intersects Gartside immediately east of the railroad crossing. A stop sign is located on the northeast corner of Gartside and 17th Street for westbound traffic on Gartside, the direction Donald Larkin was traveling. A standard railroad crossarm sign reading "Railroad Crossing. Five tracks" was located on the north side of Gartside east of the first set of railroad tracks. The crossing was not protected by any other warning signs or devices. A brakeman, Carl E. Verbeck, testified to placing a fusee at the crossing, but there was conflicting testimony as to whether or not it remained lit. There was also conflicting testimony as to whether a street light above the tracks was lit. The inference is that neither fusee nor street light was lit at the time of the accident.

Donald Larkin, age 35, was a pipefitter foreman for Powers Regulator Company of St. Louis, for whom he had worked steadily for the preceding twelve years. At the time of his death he was in charge of a job at Murphysboro, Illinois. On that particular job he had been working "on and off for about two or three months". He was married and had two

children. On the evening of the day in question Larkin ate dinner in a restaurant where he was a regular customer and which was located about four blocks from the scene of the accident. A witness stated that he left the restaurant between 9:20 and 9:35 P.M. and at that time he did not appear to have been drinking and was in full command of his senses and capabilities. From the restaurant, it was two blocks south to Gartside Street and then two blocks west to the crossing. Larkin was driving in a westerly direction on Gartside Street. So traveling, he passed the stop sign for the intersection of 17th Street without stopping and crashed into the standing train. He was instantly killed. The track on which the train was standing was approximately 124 feet from the stop sign. Skid marks left by the decedent's car measured 52 feet in length.

Plaintiff introduced the testimony of witnesses Judy Perschbacher and Wiley Thompson, Judy being a 15-year-old high school student and Wiley an 18-year-old student at the time of the accident. They had been driving in an easterly direction on Gartside. When they were about half a block from the railway crossing a trainman (Verbeck) stopped them, using a flare, and the train went across the tracks in front of them. Wiley parked his car at the crossing, turned off the motor, and turned on his parking lights. The train at that time was standing still. The doors of the boxcar blocking the crossing were closed. By looking straight ahead, however, they could see beneath the train, since it was on a higher level. They had been waiting there from two to five minutes when they saw the decedent's car approaching from the east. It had all four headlights on bright. Judy testified positively that the decedent's car did not stop at the stop sign for 17th Street. Wiley was uncertain, although originally he "was pretty sure he didn't" stop. Neither witness was able to estimate the speed of the decedent's car. Verbeck, the brakeman, was at a distance of 120 to 150 feet away from the scene of the ac-

cident when he witnessed the decedent's car cross 17th Street at a speed estimated by him of 40 to 45 miles per hour. When he first observed the car, it was going through the stop sign for 17th Street. He heard the brakes squeal, saw the car nose down and then saw the collision. Two witnesses riding in a northerly direction on 17th Street saw the decedent's car traveling west on Gartside. One estimated his speed at 35 to 50 miles per hour, while the other gave no opinion. The force of the collision drove the decedent's car under the boxcar almost to the back of the front seat.

There was expert testimony to the effect that the decedent's automobile was traveling at a minimum speed of 20 miles per hour when it struck the boxcar and a minimum of 40 miles per hour when the skid marks began. The same expert testified that at such a speed the car would travel 44 feet during the "reaction time".

■■ In summary, then, the evidence appears without dispute that the deceased, driving a new car which he had purchased but five weeks before, with the four headlights turned on bright, and going in a westerly direction, passed a stop sign at a rate of speed estimated by eyewitnesses at between 35 and 50 miles per hour, failed to heed the warning of a railroad crossbuck sign, skidded his car a distance of 52 feet after applying the brakes and crashed into a standing freight train which had been blocking the crossing for a period of between two and five minutes. There would seem to be no evidence that the deceased exercised any care for his own safety. With no evidence of lack of perceptibility shown, he clearly disregarded the stop sign, the railroad crossbuck warning sign and the freight train itself. Plaintiff takes the position, however, that a jury question was presented as to whether the defendant failed to adequately and sufficiently warn traffic on Gartside Street of the existence of its railroad crossing and the presence thereon of its standing boxcar and argues, "If the jury concluded that the defendant

was negligent in failing to adequately and sufficiently warn motorists traveling west on Gartside Street both of the presence of the railroad crossing and of boxcars situated thereon, then such motorists could not be lacking in due care on their part in failing to see and discover the crossing and the railroad box car. Logically it cannot be said that a person fails to exercise ordinary care to see that which cannot be seen and whether one could see is a question of fact to be decided by the proper forum, the jury. New York Central Railroad Company v. Chernew, C.A.8th, 285 F.2d 189, 198. The rule is the same in Illinois. Walter v. City of Rockford, 332 Ill.App. 243, 74 N.E.2d 903, l. c. 905, * * *."

■ It is true that the jury must have found the defendant railroad company guilty of negligence which contributed to the accident. Plaintiff's conclusion, however, that this excuses the plaintiff from the burden of establishing due care on the part of the deceased does not at all reasonably follow. Neither the argument made nor the authorities cited support such a contention. Plaintiff still had the burden of affirmatively showing that the deceased was in the exercise of due care for his own safety at the time of the accident and his death

■ Plaintiff also argues that there is a presumption of due care upon the part of a deceased person and that such presumption satisfies the necessity of an affirmative showing of due care. The presumption is, of course, rebuttable and the uncontradicted evidence here clearly rebuts the presumption. Additionally, it is only where there are no eyewitnesses that evidence as to the deceased's normal habits may be relied on to establish due care. Karlock v. New York Cent. R. Co., 1948, 333 Ill.App. 655, 78 N.E.2d 122; Randolph v. New York Cent. R. Co., 1948, 334 Ill.App. 268, 79 N.E.2d 301, 304; Elliott v. Elgin, J. & E. Ry. Co., 1945, 325 Ill.App. 161, 59 N.E.2d 486, 492–493. It could be noted that none of the above cases really talks about a presumption of due care, but

rather whether or not evidence of careful habits is admissible when there are no eyewitnesses to the accident.

Here there was a showing by both plaintiff's and defendant's witnesses of excessive speed and disregard of the stop sign and the railroad crossbuck sign. In addition, the boxcar itself, standing blocking the entire street, was a warning. Illinois law is to the effect that a train upon a crossing is notice to the driver. In Coleman v. Chicago, B. & Q. R. Co., 1936, 287 Ill.App. 483, 5 N.E.2d 103, at page 105 the court states:

"It is thus apparent that the decided weight of authority establishes the proposition that, where a railroad train rightfully and for a reasonable period of time occupies a crossing of its tracks with a public highway, *the very presence of the train is adequate notice and warning* to any traveler, who is in the exercise of ordinary care for his own safety, *that the crossing is occupied;* that no additional signs, signals, or warnings are required to be given by the railroad company, and that no negligence can be imputed to it for its failure so to do." (Emphasis supplied.)

In accord is Cash v. New York Cent. R. Co., 1938, 294 Ill.App. 389, 13 N.E.2d 1012, 1014.

Plaintiff cites to us cases from Illinois which hold that the mere presence of a boxcar on railroad tracks is not always notice. Specifically where there are "more than ordinary hazardous" conditions—presence *per se* is not notice. Plaintiff cites Petricek v. Elgin, Joliet & Eastern Railway Co., 1959, 21 Ill.App. 2d 60, 157 N.E.2d 421, where plaintiff ran into the side of a boxcar which was standing on a crossing during a snow storm and Applegate v. Chicago & N. W. Ry. Co., 1948, 334 Ill.App. 141, 151, 78 N.E.2d 793, which deals with an approaching train and whose applicability here is not at all apparent. In Petricek v. Elgin, Joliet & Eastern Railway Co., supra, the court stated, at page 424 of 157 N.E.2d:

"In the instant case plaintiff testified that he did not see the standing freight train across the crossing, during this blinding snowstorm, therefore it did not serve as a warning or notice to him of its presence. *A principal reason for the general rule, the element of perceptibility, i. e., notice of warning, is absent.* The crew evidently thought the situation serious enough to warn approaching trains from the east, and we believe reasonable men would believe it negligence, under the circumstances, not to warn crossing traffic of the crossing obstruction." (Emphasis supplied.)

Plaintiff argues here that this crossing was extraordinarily hazardous in that the tracks were somewhat elevated above the level of the street so that the lights of an automobile would shine under a standing boxcar and give a false illusion of safety. An examination of the exhibits before us, i. e., photographs taken immediately after the accident and others taken under circumstances similar to those existing at the time of the accident, and the undisputed testimony with reference to the crossing and its approaches fails to establish or support the claim that this was an extraordinarily dangerous crossing so that the presence of the standing train on the track was not warning to motorists traversing the crossing. Perceptibility was not absent here and the general rule is applicable.

Plaintiff also directs our attention to the fairly recent case of Bell v. Pennsylvania R. Co., 7 Cir., 1960, 284 F.2d 297. Therein, the plaintiffs' car collided with the defendant's train at a point where the defendant's single track intersects with the highway at an angle of 70 degrees, fog was present, the highway on which the plaintiffs' car was traveling was going downgrade toward the crossing in a cut which obscured vision, and the first the plaintiffs saw of the train was a dark object occupying two-thirds of the crossing at a distance of 45 to 50 feet and plaintiffs were unfamiliar with the crossing. The Court of Appeals for the Seventh Circuit, while recognizing the Illinois rule that a train upon a track is sufficient warning to the traveler upon the highway, nevertheless found that under the circumstances existing there that:

" * * * There is sufficient basis in this record to present a jury question *as to the perceptibility of the train and as to its presence upon the track for a sufficient length of time to constitute a warning* so that the bar to liability cannot be determined as a matter of law. Cf. Coleman v. Chicago, B. & Q. R. Co., 1936, 287 Ill.App. 483, 5 N.E.2d 103; Eggers v. Chicago, Milwaukee, St. Paul and Pacific Railroad Co., 7 Cir., 1957, 249 F.2d 58; and Petricek v. Elgin, Joliet, & Eastern Railway Co., 1959, 21 Ill.App.2d 60, 157 N.E. 2d 421." (Emphasis supplied.) 284 F.2d at page 298.

That case is no support for plaintiff's contentions here.

Considering the entire record, we are forced to conclude that the plaintiff failed to carry the burden of showing the deceased was in the exercise of ordinary care at the time of the accident and further that the evidence introduced necessitates the finding, as a matter of law, that the deceased was guilty of contributory negligence which was a proximate cause of the accident and his death.

Reversed and remanded with directions to dismiss.

MATTHES, Circuit Judge (concurring).

I fully concur. The trial of this case was presided over by an able and seasoned trial judge, the late Randolph H. Weber. Judge Weber's failure to interfere with the jury's verdict and enter judgment for the defendant notwithstanding the verdict caused me more than passing concern. Careful consideration and analysis of the evidence, which is fully and accurately set out in the opinion, conclusively establish that: (1)

the railroad crossing was not "extra-hazardous"; (2) weather conditions were normal at the time of the incident; (3) the pavement was dry; (4) the headlights on decedent's automobile were on high beam; (5) perceptibility was present; (6) deceased drove through a stop sign approximately 124 feet from the point of impact; (7) the automobile driven by decedent skidded 52 feet before the collision.

Under the facts viewed in the light most favorable to plaintiff, it was conclusively established that decedent failed to exercise ordinary care for his own safety.