812 F.2d 402
 22 Fed. R. Evid. Serv. 835
 Kevin Brent MONGER, II, Amanda Keann Monger, Minors By and
Through their Next Friend and Guardian, Appellants,
United Missouri Bank of Kansas City, National Association,
Ashby Monger, Huberta Monger and Evelyn Register, Appellants,
v.
The CESSNA AIRCRAFT COMPANY, Appellee.
 No. 86-1555.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 14, 1987.
Decided Feb. 23, 1987.
Rehearing Denied May 26, 1987.
 
 Glenn E. Bradford, Kansas City, Mo., for appellants.
 John W. Cowden, Kansas City, Mo., for appellee.
 Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and MAGILL, Circuit Judge.
 MAGILL, Circuit Judge.
 
 
 1
 Kevin Brent Monger II and Amanda Keann Monger ("Monger")[1], brought this diversity action under Missouri's wrongful death statute, Mo.Rev.Stat. Sec. 537.020, against the Cessna Aircraft Company ("Cessna"), seeking damages for the death of their parents in the crash of a Cessna 210-J aircraft. They alleged negligence in the design of the aircraft, as well as strict liability. After a three-week trial, the jury returned a verdict for Cessna. The district court[2] denied Monger's motion for a new trial and entered judgment accordingly. For reversal, Monger asserts prejudicial error in the district court's rulings on the presumption of due care and various evidentiary issues. We affirm.
 
 
 2
 I. FACTUAL BACKGROUND.
 
 
 3
 The fatal crash occurred on August 12, 1982, while the deceased Kevin Monger was flying from Johnson County Executive Airport in Johnson County, Kansas to McComas Airport in Lee's Summit, Missouri, accompanied by his wife, the deceased Anita Monger. Earlier that day, Kevin had flown his plane to Johnson County from Billard Airport in Topeka, Kansas, where it had been repainted at R & B Aircraft.
 
 
 4
 Monger's theory at trial was that undetectable water in the fuel system caused the crash, due to the defective design of the plane. Cessna asserted that the crash resulted from exhaustion of the plane's fuel supply. The relevant evidence was as follows.
 
 
 5
 Kevin Monger's flight instructors, Phil LePage and Charles Nichols, testified that they had taught him to conduct a proper pre-flight inspection of his airplane, which included a physical check of the fuel supply, rather than relying on the cockpit fuel gauges. Pre-flight inspection of the fuel level required that Kevin climb on a ladder to reach the opening of the fuel tanks. The uncontradicted evidence clearly shows that Kevin did not conduct a physical inspection of the fuel supply before leaving R & B Aircraft on August 12, 1982, despite the availability of a ladder. Nor did he purchase fuel.
 
 
 6
 After leaving R & B Aircraft, Kevin taxied the plane to a nearby airport restaurant, where he parked and went in for dinner with his wife and Phil LePage. Kevin left the restaurant approximately ten or fifteen minutes before his wife and Phil LePage left, but there was no ladder near the plane or outside the restaurant, or any other evidence that Kevin had checked the fuel at that time. By the time his wife and Phil LePage had exited the restaurant, Kevin had started the plane, and he took off soon thereafter, with his wife and Phil LePage following in a separate aircraft.
 
 
 7
 Kevin landed at Johnson County, where fuel was available, but he did not purchase any. His wife got in his plane, and both planes left for Lee's Summit. Shortly after entering his landing pattern at Lee's Summit, Kevin radioed to Phil LePage that he had lost his engine. Thereafter, the plane crashed, resulting in the deaths of Kevin and Anita Monger.
 
 
 8
 Monger presented testimony that both fuel tanks had been three-quarters full, according to the two fuel gauges, when the plane was brought to Topeka, and that there was no evidence that any fuel had been used or removed while the plane was in Topeka. Monger also presented evidence that the crash was caused by water in the fuel and that with Cessna's design and following Cessna's recommended pre-flight instructions in its owner's manual, water in the fuel could not be adequately detected and eliminated.
 
 
 9
 Cessna presented testimony that there was only one-half gallon of fuel in the right fuel tank after the crash, and that the fuel tank selector valve was switched to the left tank position. There was also substantial testimony that, although both fuel tanks had been breached as a result of the crash, there was no evidence of fuel spillage at the site of the crash. Nor was there any water in the fuel system or engine after the crash. Cessna also presented three expert witnesses who testified that the crash occurred because the plane ran out of fuel.
 
 
 10
 II. PRESUMPTION OF DUE CARE.
 
 
 11
 A. Jury Instruction.
 
 
 12
 Monger argues that the district court erred in refusing to instruct the jury on a presumption of due care. Monger reasons that to prove his case, he had to show that the plane was used in the manner reasonably anticipated by Cessna, that is that Kevin Monger performed a pre-flight inspection in accordance with the owner's manual, checking both the fuel supply and for the presence of water in the fuel. Monger contends that he was entitled to an instruction directing the jury that Kevin was presumed to have exercised due care, in the absence of direct or persuasive circumstantial evidence that a proper pre-flight inspection was not performed.
 
 
 13
 In a diversity case, the effect of presumptions is a substantive question, requiring application of state law. Dick v. New York Life Ins. Co., 359 U.S. 437, 446, 79 S.Ct. 921, 3 L.Ed.2d 935 (1958); see also Gulf, Mobile and Ohio R.R. v. Larkin, 307 F.2d 225, 228 (8th Cir.1962) (applying Illinois law to issue of burden of proving whether plaintiff exercised due care); Fed.R.Evid. 302.
 
 
 14
 In one of the seminal cases on the presumption of due care in a jury trial, the Missouri Supreme Court stated:
 
 
 15
 [T]he law presumes that the plaintiff, in an action to recover damages for injuries sustained at the hands of another, was at the time of the injury in the exercise of ordinary care. Slight circumstances, however, may overthrow this presumption.
 
 
 16
 Cahill v. Chicago & Alton Ry., 205 Mo. 393, 103 S.W. 532, 535 (1907) (citations omitted) (emphasis supplied). The appellate court thus upheld the trial court's instruction to the jury, "that under the law, in the absence of proof to the contrary, you will presume that, at the time the plaintiff's husband was struck and killed, he was in the exercise of ordinary care on his part for his own safety." Id. 103 S.W. at 534, 535 (emphasis supplied). Applying this law, the Missouri Court of Appeals subsequently held there was no error in "advising the jury that there is a presumption, in the absence of proof to the contrary, that * * * the deceased * * * was in the exercise of ordinary care for his own safety." Hasenjaeger v. Missouri-Kansas-Texas R.R., 227 Mo.App. 413, 53 S.W.2d 1083, 1087 (1932) (emphasis supplied).
 
 
 17
 In contrast, in a bench trial, where there is no direct or eye-witness evidence that the decedent was negligent, Missouri law requires the court to presume he or she exercised due care. E.g., Foley v. Hudson, 432 S.W.2d 205, 209 (Mo.1968); Keeney v. Callow, 349 S.W.2d 75, 80 (Mo.1961); Lyon v. Southard, 323 S.W.2d 785, 788 (Mo.1959). These cases did not purport to overturn the precedent that a trial judge may find it inappropriate to instruct the jury on the plaintiff's presumption of due care because of "[s]light circumstances" or "proof to the contrary," however. Indeed, under well-settled Missouri law, "it is reversible error to instruct the jury as to the existence of a presumption when there is evidence to rebut it." Kansas City v. Cone, 433 S.W.2d 88, 93 (Mo.Ct.App.1968) (citations omitted).[3] Furthermore, the Missouri Supreme Court has recognized that "the existence of only circumstantial evidence on a material issue is no bar to recovery of and by itself [citation omitted]" so long as the evidence establishes the desired inference "with such certainty as to cause it to be the more reasonable and probable of the conclusions to be drawn [citation omitted]." Vaughn v. Taft Broadcasting Co., 708 S.W.2d 656, 661 (Mo.1986) (en banc) (affirming judgment on jury verdict).
 
 
 18
 In the present case, the district court concluded that the applicable law did not support a presumption of due care instruction because there was circumstantial evidence that Kevin Monger did not conduct a proper pre-flight inspection of the aircraft's fuel supply or for water in the fuel. We agree with the district court that circumstantial evidence of the decedent's negligence may be enough to deprive the plaintiff of an instruction on the presumption of due care. Hasenjaeger, 53 S.W.2d at 1087; see generally Vaughn, 708 S.W.2d at 661. The testimony that Kevin Monger did not conduct a proper pre-flight inspection before leaving R & B Aircraft, and that he did not have a ladder with which to conduct a pre-flight inspection outside of the airport restaurant, support the inference that no such inspection occurred. This was direct and circumstantial evidence of Kevin's negligence in operating the plane. We thus hold that the district court did not err in refusing to instruct the jury on the presumption of due care, because there was sufficient "contrary proof" to rebut any such presumption.
 
 
 19
 B. Closing Argument.
 
 
 20
 Monger contends that the district court erred in refusing to allow him to assert the presumption of due care in closing argument. Noting that Monger did in fact argue the presumption of due care despite the district court's direction not to,[4] we hold that the district court did not err, based on the above analysis.
 
 
 21
 III. EVIDENTIARY ISSUES.
 
 
 22
 A. Exclusion of Plaintiffs' Exhibit 40.
 
 
 23
 Monger contends that the district court erred in excluding plaintiffs' Exhibit 40. Cessna operated under a Designated Option Authority ("DOA"), whereby it was permitted to certify to the FAA its compliance with federal regulations relating to the design of its aircraft. The exhibit consists of a letter from the Chief of the Federal Aviation Administration's ("FAA") Flight Standards Division to a Cessna Vice President, criticizing Cessna for past failure to identify safety problems in its planes. Monger argues that the exhibit supported its claim that the aircraft in question had a defective design, by showing that its fuel system may not have met FAA standards. The letter was offered to show that although Cessna had obtained FAA certification for the model 210-J, the certification did not necessarily indicate that the plane met FAA safety standards.
 
 
 24
 The district court excluded Exhibit 40 on grounds that it related to prior misconduct of Cessna[5] and it would be overly confusing to the jury.[6] Evidence of prior misconduct is generally inadmissible for purposes of showing that the plaintiff or defendant was more likely to have been at fault. Fed.R.Evid. 404(b); see Keyes v. Missouri Pacific R.R., 589 F.2d 791, 793-4 (5th Cir.1979) (admission of evidence of plaintiff's four prior misdemeanor convictions for public drunkenness was prejudicial error in diversity suit for personal injuries sustained by plaintiff when he was run over by defendant's train as he lay on the tracks). Similarly, evidence of prior accidents may not be introduced to show that a party is accident prone, and therefore more likely to have been at fault. See 2 Weinstein & Berger, WEINSTEIN'S EVIDENCE p 404 at 404-167 (1986); Smith v. State Farm Fire & Casualty Co., 633 F.2d 401, 403 (5th Cir.1980) (in action to recover under fire insurance policy, evidence of prior fires not admissible); cf. Warner v. Transamerica Ins. Co., 739 F.2d 1347, 1350 (8th Cir.1984) (in action to collect under fire insurance policy, prejudicial effect of evidence of a prior fire at plaintiff's residence outweighed probative value, where there was no evidence to suggest that prior fire was of incendiary origin). An exception to this rule is that:
 
 
 25
 Evidence of other accidents in the same place or involving the same machinery or instrumentality is generally admissible, not because it shows that defendant has a general tendency to be negligent, but because it tends to prove either (1) the existence of a dangerous or defective condition where this is in issue or (2) that defendant knew or should have known of the dangerous or defective condition.
 
 
 26
 2 Weinstein & Berger p 404 at 404-168 (footnote omitted); see also Melville v. American Home Assurance Co., 584 F.2d 1306, 1315-16 (3d Cir.1978) (airworthiness directives describing unsafe conditions in similar aircraft admissible in action to recover under insurance policy for accidental death in plane crash). If the prior event was sufficiently similar, or involved the same machinery or other instrumentality, the evidence is admissible, so long as its probative value is not outweighed by the dangers of unfair prejudice or confusing the jury. Smith, 633 F.2d at 403; Fed.R.Evid. 403.
 
 
 27
 We accord the district court "broad discretion" in deciding whether to admit evidence of wrongful acts. See Williams v. Mensey, 785 F.2d 631, 638 (8th Cir.1986) (prior criminal conduct). In addition, the district court has "considerable discretion" in deciding whether to send exhibits to the jury. See United States v. Robinson, 774 F.2d 261, 275 (8th Cir.1985) (criminal case setting forth "considerable discretion" standard for admission of exhibits); Turner v. Burlington Northern R.R., 771 F.2d 341, 346 (8th Cir.1985) ("abuse of discretion" standard applies generally to district court's evidentiary rulings).
 
 
 28
 Exhibit 40 was essentially a warning to Cessna that if it was not more careful in checking its planes for unsafe conditions, it would lose its DOA. The letter referred to Cessna's prior misconduct, in failing to identify various service problems with its planes. It is not clear from the record just what the implications of revocation of Cessna's DOA would be, however. The letter might have supported the inference that Cessna improperly received FAA approval of the fuel system in the model 210-J aircraft, and was thus more likely to have been at fault. But the letter did not specifically relate to whether the 210-J plane and its fuel system had in fact received proper FAA approval or were otherwise unsafe. The district court properly exercised its discretion in excluding this exhibit as overly confusing. Compare Melville, 584 F.2d at 1315-16.
 
 
 29
 B. Exclusion of Plaintiffs' Exhibit 386.
 
 
 30
 Monger contends that the district court erred in excluding his Exhibit 386 as evidence of a subsequent remedial measure.[7] The exhibit is a publication issued by Cessna in 1985 to supplement the pilot safety instructions in its 1969 owner's manual for the model 210-J. Monger argues that the exhibit shows that the owner's manual relied on by Kevin was defective, and that the bar on evidence of subsequent remedial measures should not apply to actions in strict liability.
 
 
 31
 Cessna urges that even if the district court should not have applied the rule against evidence of subsequent remedial measures in the present case, any error was harmless, because the district court admitted plaintiffs' Exhibits 44, 59 and 60 into evidence. We agree with Cessna that those exhibits, which consist of supplemental information sent to owners of Cessna aircraft in 1980, explaining how to properly conduct a pre-flight inspection for water in the fuel, established the same argument that Monger sought to make through Exhibit 386. Clearly any error which might arise from the exclusion of evidence or exhibits is harmless where the same facts are shown by other evidence and exhibits. Vilter Mfg. Co. v. Rolaff, 110 F.2d 491, 500 (8th Cir.1940); Tennis v. General Motors Corp., 625 S.W.2d 218, 233 (Mo.Ct.App.1981). Therefore, we need not decide whether the rule against evidence of subsequent remedial measures applies to the present case,[8] and simply hold that any error by the district court was harmless.
 
 
 32
 C. Admission of Expert Deposition Testimony.
 
 
 33
 Monger contends that the district court erred in overruling his objection to the video-taped deposition testimony of Cessna's witness, Dale Carter, who gave an expert opinion as to the cause of the plane crash. Carter was employed by Teledyne Continental Motors at the time of the investigation. Monger asserts that because Carter worked closely with the National Transportation Safety Board (NTSB) in its investigation of the crash, his conclusions were barred by Section 304(c) of the Independent Safety Board Act of 1974.[9]
 
 
 34
 We disagree. Although Carter's opinion as to the cause of the crash was outside of the scope of permissible testimony for an NTSB employee, see 49 C.F.R. Sec. 835.3(b) and American Airlines, Inc. v. United States, 418 F.2d 180, 196 (5th Cir.1969), he was not an NTSB employee, so the statute does not apply to him. Indeed, the applicable regulations specifically direct litigants to obtain their expert witnesses from sources other than the NTSB's investigative staff. 49 C.F.R. Sec. 835.3(a).
 
 
 35
 IV. CONCLUSION.
 
 
 36
 The district court's judgment in favor of Cessna is affirmed.
 
 
 37
 BRIGHT, Senior Circuit Judge, concurring.
 
 
 38
 I write separately for the purpose of stating my views on the federal district court's privilege to instruct a jury on presumptions in the face of a contrary state practice.
 
 
 39
 Missouri does not permit trial judges to instruct juries on presumptions. Dove v. Atchison, T. & S.F. Ry. Co., 349 Mo. 798, 163 S.W.2d 548, 550-51 (1942). However, state law only controls the substance of jury instructions in a diversity action. Federal law determines the grant or denial of instructions as a procedural matter. Hrzenak v. White-Westinghouse Appliance Co., 682 F.2d 714, 719 (8th Cir.1982). Under federal law, the parties are entitled to an instruction on their theory of the case as long as it is properly requested and the evidence supports the request. Lackawanna Leather Co. v. Martin & Stewart, Ltd., 730 F.2d 1197, 1201 (8th Cir.1984). In this case, the jury might have determined that the circumstantial evidence did not carry an inference that the pilot failed to check his fuel. Under that circumstance, Missouri law presumes due care by the plaintiff and, therefore, under federal practice, the district court might have instructed the jury about this presumption notwithstanding a contrary Missouri procedure.
 
 
 40
 Although this omission to instruct on the presumption could be deemed error, I view the error as harmless inasmuch as the litigants tried this diversity case in accordance with the usual instructions given in Missouri courts.
 
 
 
 [1]
 Other relatives of the deceased subsequently intervened as plaintiffs; we will jointly refer to all of the plaintiff-appellants as "Monger," however
 
 
 [2]
 The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri
 
 
 [3]
 Missouri's rule is consistent with "countless modern decisions." McCORMICK ON EVIDENCE Sec. 344 at 975 (E. Cleary 3d ed. 1984). As Wigmore explains:
 [I]t must be kept in mind that the peculiar effect of a presumption "of law" (that is, the real presumption) is merely to invoke a rule of law compelling the jury to reach the conclusion in the absence of evidence to the contrary from the opponent. If the opponent does offer evidence to the contrary (sufficient to satisfy the judge's requirement of some evidence), the presumption disappears as a rule of law and the case is in the jury's hands free from any rule [citations omitted].
 
 
 [9]
 J. Wigmore, EVIDENCE Sec. 2491(2) at 305 (Chadbourn Rev.1981) (emphasis in original)
 
 
 [4]
 Monger injected the presumption of due care into his closing argument by stating:
 [T]he rules do not require you to assume that Mr. Monger was negligent. The rules don't require you to assume that somebody who is dead and can't speak for themselves and say, of course, I preflighted the flight.
 The rules don't require you to presume that he was careless. They allow you to assume in the absence of any testimony to the contrary that he did what an average, reasonable person would do and he preflighted his aircraft at least to the standards of the manual.
 Tr. III at 221.
 
 
 [5]
 Fed.R.Evid. 404(b) provides:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 [6]
 Fed.R.Evid. 403 provides:
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
 
 
 [7]
 Fed.R.Evid. 407 provides:
 When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.
 
 
 [8]
 It is not clear whether state or federal law applies to this issue in a diversity case. DeLuryea v. Winthrop Laboratories, 697 F.2d 222, 228 n. 4 (8th Cir.1983). This court has held that the rule against admitting evidence of subsequent remedial measures does not apply to strict liability cases. E.g., Unterburger v. Snow Co., 630 F.2d 599, 603 (8th Cir.1980); Farner v. Paccar, Inc., 562 F.2d 518, 528 (8th Cir.1977); Robbins v. Farmers Union Grain Terminal Ass'n, 552 F.2d 788, 793 (8th Cir.1977). But cf. DeLuryea, 697 F.2d at 229 (rule against evidence of subsequent remedial measures does apply to products liability action against drug manufacturer); McGowne v. Challenge-Cook Bros., 672 F.2d 652, 665 (8th Cir.1982) (recognizing split between the Second and Eighth Circuits on applicability of rule to strict liability actions, and leaving issue for district court to decide on remand). Under Missouri law, whether evidence of subsequent remedial measures is admissible in a strict liability action is an open question. See Keller v. International Harvester Corp., 648 S.W.2d 584, 588 n. 2 (Mo.Ct.App.1983); Tennis v. General Motors Corp., 625 S.W.2d 218, 232 (Mo.Ct.App.1981)
 
 
 [9]
 The Act provides in pertinent part:
 No part of any report of the [NTSB] relating to any accident or the investigation thereof, shall be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such report or reports.
 49 U.S.C. Sec. 1903(c) (1982). The corresponding regulations extend the meaning of "report" to bar opinion testimony as to the cause of a crash:
 Section 701(e) of the FA Act and section 304(c) of the Safety Act preclude the use or admission into evidence of [NTSB] accident reports in any suit or action for damages arising from accidents. The purpose of these sections would be defeated if expert opinion testimony of [NTSB] employees, which is reflected in the ultimate views of the [NTSB] expressed in its report concerning the cause of an accident, were admitted in evidence or used in private litigation arising out of an accident. The [NTSB] relies heavily upon its investigators' opinions in determining the cause or probable cause of an accident, and the investigators' opinions thus become inextricably entwined in the [NTSB's] determination. Furthermore, the use of [NTSB] employees as experts to give opinion testimony would impose a serious administrative burden on the [NTSB] investigative staff. Litigants should obtain their expert witnesses from other sources. * * * [NTSB] employees may testify as to the factual information they obtained during the course of the accident investigation, including factual evaluations embodied in their factual accident reports. However, they shall decline to testify regarding matters beyond the scope of their investigation, or to give opinion testimony concerning the cause of the accident.
 
 
 [49]
 C.F.R. Sec. 835.3 (1985)